**KREMER, Appellant and Cross–Appellee,**

**v.**

**COX, Appellee and Cross–Appellant;**

**State Medical Board of Ohio, Intervenor.**

[Cite as *Kremer v. Cox* (1996), 114 Ohio App.3d 41.]

Court of Appeals of Ohio,
Ninth District, Summit County.

Nos. 17370 and 17394.

Decided Sept. 11, 1996.

42

44

46

*Roderick, Myers & Linton* and *Lawrence R. Bach,* for appellant and cross-appellee.

*A. William Zavarello Co., L.P.A.,* and *A. William Zavarello,* for appellee and cross-appellant.

*Lisa M. Fromm,* Summit County Assistant Prosecuting Attorney, for appellee and cross-appellant.

*Betty D. Montgomery*, Attorney General, and *Anne Berry Strait*, Assistant Attorney General, Health and Human Services Section, for intervenor, State Medical Board of Ohio.

———————

BAIRD, Judge.

The parties to this case, Dr. Richard M. Kremer and Dr. William A. Cox, and his corporation, WAC M.D., Inc. (collectively, "Cox"), present their appeals from the decision rendered in the Summit County Court of Common Pleas. The State Medical Board of Ohio ("SMBO") also appears as a party herein, but only with respect to one assignment of error raised by Kremer. The Summit County Prosecutor's Office has also appeared, since one of Kremer's assignments of error involves Cox's actions in his capacity as Summit County Coroner.

Kremer was the chief surgeon at St. Thomas Hospital in Akron, Ohio. Cox also practiced at that facility, as the chief of pathology. Cox was also the Summit County Coroner. Cox testified that he had been subjected to pressure by Kremer and other medical and administrative personnel to (a) cease his investigation into the death of one of Kremer's patients and (b) implement a training program for pathology residents using the county coroner's facilities. Cox testified that he reported the pressures to the Summit County Prosecutor's Office. That office, which represented Cox only in his capacity as Summit County Coroner, conducted an investigation. Fred Zuch, a member of the prosecutorial staff, testified that, although he had a meeting with several hospital officials regarding Cox's concerns, no charges were ever filed.

Cox claimed that, when he refused to comply with the demands made by the administrative staff of the Summa Health Corporation, which employed him, he was subjected to harassment, increased working hours, decreased salary, threats, and termination. When St. Thomas Medical Center merged with Akron City Hospital (the combined entity was known as the Summa Health Corporation), Cox was removed as chief of pathology and, eventually, terminated from his hospital position altogether.

Prior to leaving the hospital, Cox, in his capacity as coroner, received a report from a St. Thomas physician [1] that one of Kremer's patients had died after surgery. In addition, a television reporter provided Cox with a copy of a report from the SMBO that indicated that another patient of Kremer's had died of

———————

1. Kremer avers that a Dr. Moss was the source of the report; Cox testified that he does not remember the person who made the report.

excessive blood loss.[2] After reviewing the SMBO's report, Cox changed that patient's death certificate, and notified the patient's next of kin that he believed Kremer had not accurately reported the cause of death.

Cox, still acting as coroner, also decided to have an outside expert review three other cases of Kremer patients who had died. Cox stated that this was standard procedure when he was personally acquainted with the primary physician. He announced these intentions in an article reported in the Akron newspaper. Only two of the three cases were actually sent out for review. In his letter to the reviewing physician, Cox indicated that he specifically was questioning anesthetic care, surgical technique, and postsurgery patient management. The outside examiner charged only $125 for the review of both cases, considered by other physicians to be a very low fee. The examiner could not determine that Kremer had committed any errors. The investigations by both Cox and the SMBO were the subject of significant media exposure.

Cox received a written notice from Summa indicating that he would be terminated from his position as a pathologist due to the consolidation of the two hospitals. Cox requested that Summa reconsider this decision; his request was denied. On June 28, 1993, Cox filed a civil suit against Summa, Kremer, and several other physicians and administrators. In the complaint, Cox alleged that Summa, and various Summa personnel including Kremer, had committed a number of offenses against him, and sought an injunction against his termination. Again, there was significant publicity. A temporary injunction was granted. Cox settled that lawsuit after thirty-eight days; although Kremer did not contribute to the settlement, the case against him was dismissed.[3]

After Cox had dismissed his suit, on November 23, 1993, Kremer filed suit against Cox, both individually and in his capacity as coroner. Kremer's complaint included counts of defamation, malicious prosecution, abuse of process, abuse of authority, negligent infliction of emotional distress, and intentional infliction of emotional distress. Generally, the complaint alleged that, as a result of Cox's actions, Kremer had suffered humiliation, damage to his reputation, the loss of his practice, and a loss of income.

Kremer attempted to subpoena the attorneys who had filed Cox's suit, as well as Fred Zuch, the assistant prosecutor who had testified at a hearing while that suit was pending regarding the steps taken by the prosecutor's office on behalf of

---

**2.** Such reports are normally confidential. The record does not indicate how the media came into possession of such information. However, the report apparently prompted Cox to change the death certificate of that particular patient from listing death by natural causes (as reported by Kremer) to accidental death.

**3.** The case against Kremer was dismissed without prejudice. It has not been refiled.

the coroner. Kremer also attempted to subpoena certain records and representatives from the SMBO. After a request by Cox and the Summit County Prosecutor's Office, the trial court quashed Kremer's subpoenas and granted protective orders to Zuch and Cox's civil attorneys, Paige Martin and A. William Zavarello.

Cox then moved for summary judgment on each count of the complaint. After responses from Kremer and other filings by the prosecutor's office and the SMBO, the trial court granted summary judgment to Cox on all counts except the alleged abuse of process. That charge proceeded to trial, where a jury awarded Kremer $10,000 in compensatory damages and $80,000 in punitive damages. Both Cox and Kremer now appeal; each presents three assignments of error. We first discuss the assignments of error presented by Cox and then move to a discussion of Kremer's assignments of error.

## A. COX'S ASSIGNMENTS OF ERROR

Cox presents three assignments of error. In his first two assignments of error, pertaining to the abuse of process claim tried below, Cox avers that the trial court (1) erred in not dismissing the claim pursuant to Cox's motions for summary judgment regarding both the claim itself and Kremer's damages and (2) erred in not granting a directed verdict for Cox on the claim itself, as well as with respect to Kremer's damages.

In these assignments of error, Cox alleges that the trial court committed error in denying summary judgment. However, even if such an error was committed, it would be harmless in this instance. Errors in denying summary judgment are not reversible where the matter eventually proceeds to trial and is resolved in favor of the nonmoving party:

"We hold that any error by a trial court in denying a motion for summary judgment is rendered moot or harmless if a subsequent trial on the same issues raised in the motion demonstrates that there were genuine issues of material fact supporting a judgment in favor of the party against whom the motion was made." *Continental Ins. Co. v. Whittington* (1994), 71 Ohio St.3d 150, 156, 642 N.E.2d 615, 619. Insofar as they relate to the motions for summary judgment, then, Cox's first two assignments must be overruled, since he could not be awarded relief even if error were present.

Cox's first two assignments of error also allege that the trial court erred in failing to direct verdicts for Cox (1) on the claim itself and (2) with respect to the proximate cause of Kremer's damages. However, the record reveals that,

although Cox made these motions at the close of Kremer's case-in-chief,[4] at which time they were denied, he failed to renew them at the close of all the evidence. Therefore, Cox waived his right to assert the denial of a directed verdict on appeal. *Chem. Bank of New York v. Neman* (1990), 52 Ohio St.3d 204, 206–207, 556 N.E.2d 490, 492–494. Accordingly, Cox's first two assignments of error are overruled.

Cox's third assignment of error alleges that the trial court erred in denying his motion for a new trial pursuant to Civ.R. 59(A)(6) and (7), which was premised upon the grounds that the jury's verdict was against the manifest weight of the evidence and contrary to law. We first consider the claim that the verdict was contrary to law.

▮ The claim that proceeded to trial was one for alleged abuse of process by Cox. Abuse of process consists of three elements: (1) a legal proceeding has been set in motion in proper form and with probable cause, (2) the proceeding has been perverted to attempt to accomplish an ulterior purpose for which it was not designed, and (3) direct damage has been incurred by a party as a result of the abuse. *Yaklevich v. Kemp, Schaeffer & Rowe Co., L.P.A.* (1994), 68 Ohio St.3d 294, 298, 626 N.E.2d 115, 118.

▮ According to Kremer, Cox had included Kremer in Cox's suit against Summa for the "ulterior purpose" of causing him embarrassment and humiliation. Kremer claims that, as a result of Cox's suit and the statements made in Cox's complaint, his reputation and practice have been damaged.

Cox's suit was in existence for only thirty-eight days; Kremer, although included in the complaint as a defendant, was dismissed prior to the other defendants. In his complaint, Kremer is clear that the only act about which he is complaining is the filing of the Cox's complaint itself: "[Cox's] act in filing the civil lawsuit against the Plaintiff was a willful and improper use of process[.]"

It is clear, though, that Kremer, as a matter of law, was not entitled to relief for a claim of abuse of process:

▮ "The tort of abuse of process arises when one maliciously misuses legal process to accomplish some purpose not warranted by law. The key to the tort is the purpose for which process is used once it is issued. *Abuse of process does not lie for the wrongful bringing of an action,* but for the improper use, or 'abuse,' of process.

---

4. After Cox initially made these motions, but prior to the presentation of any evidence or testimony by Cox, Kremer was permitted to reopen his case to introduce evidence of his damages. Cox renewed his motions at the end of Kremer's reopened case, but did not renew them at the close of all the evidence.

"* * * Thus, if one uses process properly, but with a malicious motive, there is no abuse of process, though a claim for malicious prosecution may lie. * * *

" '* * * The tortious character of the defendant's conduct consists of his attempts to employ a legitimate process for a legitimate purpose in an improper manner * * *.' " (Citations omitted, emphasis added.) *Clermont Environmental Reclamation Co. v. Hancock* (1984), 16 Ohio App.3d 9, 11, 16 OBR 9, 11–12, 474 N.E.2d 357, 361, quoting *Hauser v. Bartow* (1937), 273 N.Y. 370, 374, 7 N.E.2d 268, 269.

■ "Simply, abuse of process occurs where someone attempts to achieve through use of the court that which the court is itself powerless to order." *Robb v. Chagrin Lagoons Yacht Club* (1996), 75 Ohio St.3d 264, 271, 662 N.E.2d 9, 14. *Hancock* was cited with approval by the Supreme Court of Ohio in both *Yaklevich* and *Robb*.

Kremer contends that, by including Kremer in his lawsuit, Cox committed a tort. Kremer's claim was premised solely on the filing of Cox's complaint itself, which Kremer claims was done without probable cause and for nefarious purposes. Such a rationale may support a claim for malicious prosecution, but cannot provide a sufficient foundation for an abuse of process action. *Yaklevich v. Kemp, Schaeffer & Rowe Co., L.P.A.*, 68 Ohio St.3d at 297–298, 626 N.E.2d at 117–118. The trial court should have granted Cox's motion for a new trial on the ground that the jury's verdict was contrary to law pursuant to Civ.R. 59(A)(7), since, as a matter of law, Kremer was not entitled to relief for the mere institution of Cox's lawsuit.

Moreover, Kremer does not contend that Cox used process properly initiated for an improper purpose. Rather, on the record before this court, it is clear that Kremer's argument is that Cox's suit was *not* properly initiated, at least with respect to Kremer.[5] Even (perhaps especially) if we accept Kremer's claims as true, such allegations do not provide a sufficient legal foundation for a claim of

---

5. The essence of Kremer's claim is that the suit against him was brought without probable cause, for an "ulterior" malicious purpose; he does not contend, and presented no evidence to show, that the suit was initially brought with probable cause and later "perverted" by Cox to aggravate Kremer. The record demonstrates that Kremer has consistently argued, throughout the proceedings below, in depositions, testimony, and documentary submissions, and again in his presentation to this court, that Cox had no probable cause to include Kremer in the suit in the first place; at trial, Cox argued to the contrary.

The parties' seemingly inconsistent postures and arguments notwithstanding, it is clear that probable cause is an element of a claim for abuse of process; the underlying action must be brought with probable cause in order to support a subsequent claim for abuse of process. The trial court properly instructed the jury that probable cause was an element of the claim, and the jury, in finding for Kremer, apparently determined that this element had been proven.

abuse of process; rather, they would provide support for, if anything, a malicious prosecution claim:

■ "Even though the tort of malicious prosecution and the tort of abuse of process have different elements, in some situations the same facts which may constitute an abuse of process may also support an action for malicious prosecution. In that case, a complaint could allege both causes of action, in separate counts. In such a situation, *a consideration of whether probable cause was present to bring the underlying litigation would be the key to determining under which tort theory the action should proceed.*" (Emphasis added.) *Yaklevich v. Kemp, Schaeffer & Rowe Co., L.P.A.,* 68 Ohio St.3d at 298, 626 N.E.2d at 118.

Accordingly, Cox's third assignment of error is sustained insofar as it pertains to the trial court's refusal to grant a new trial on the basis of Civ.R. 59(A)(7), since an action for abuse of process will not lie for the mere institution of proceedings. In light of that disposition, the remainder of Cox's third assignment of error is rendered moot.

## B. KREMER'S ASSIGNMENTS OF ERROR

### I

"The trial court erred in quashing the subpoena issued by Plaintiff/Appellant to the State Medical Board of Ohio."

■ On April 7, 1994, Kremer served a subpoena upon the SMBO, seeking any documents or testimony regarding complaints filed against him. In particular, Kremer sought records of any complaints made by Cox and Dr. Moss, an anesthesiologist at St. Thomas, which had resulted in the SMBO's investigation of Kremer. The SMBO refused to disclose this information and sought a protective order from the trial court. The trial court, in quashing the subpoena, held that the information was protected under the privilege conferred by R.C. 4731.22(C)(1). Kremer now contends that this determination was made in error.

R.C. 4731.22(C)(1) states, *inter alia,* that "[i]nformation received by the board pursuant to an investigation shall be confidential and not subject to discovery in any civil action." The SMBO was investigating Kremer.[6] Nonetheless, Kremer

---

6. As a result of its investigation and following an administrative hearing, on October 13, 1994, the SMBO issued reprimands to Kremer regarding his treatment of two patients. Kremer appealed that decision to the court of common pleas, which affirmed the SMBO's decision, and then to the Tenth District Court of Appeals, which likewise affirmed the SMBO's action. See *Kremer v. State Med. Bd. of Ohio* (Mar. 12, 1996), Franklin App. No. 95APE09–1247, unreported, 1996 WL 112665.

seeks a declaration that he should have been permitted access to the SMBO records.[7]

The Supreme Court of Ohio has held that such records are to be considered privileged and that their confidentiality may not be breached in the course of a civil action such as the instant case. *State Med. Bd. of Ohio v. Murray* (1993), 66 Ohio St.3d 527, 535–536, 613 N.E.2d 636, 642–643. Therefore, it does not appear that the trial court erred in quashing the subpoena.

██ Kremer also contends that whatever privilege may have attached to the documents was waived because, he claims, the SMBO disclosed one of those documents to Cox. At the outset, we note that, since the privilege which protects the documents belongs to the patients and persons who file reports with the SMBO, the SMBO may not waive the privilege. The privilege can only be waived by those who possess it. See *In re Kralik* (1995), 101 Ohio App.3d 232, 234, 655 N.E.2d 273, 273. Kremer has presented nothing to suggest that the privilege has been waived by anyone with authority to do so.

Moreover, the record does not support Kremer's contention that the SMBO disclosed any information at all, much less that the information was directly released to Cox. Rather, the record indicates that a local television reporter provided Cox with a copy of one document. According to the affidavit of the SMBO's assistant executive director, release of such documents was unauthorized, and the SMBO did not knowingly permit such disclosure. Nothing in the record indicates how the document came into the reporter's possession; moreover, the document itself was provided by Cox to Kremer pursuant to his discovery request. Furthermore, the record indicates that, when Cox attempted to follow up on the document and obtain additional information, the SMBO refused to disclose such information to him as well.

In his reply brief, Kremer urges this court to "[c]onsider the timeless question of whether a tree that falls in a desolate forest makes a noise. No one knows. In this case, the Board's action will forever prevent Dr. Kremer from discovering what Dr. Cox told the Board's investigators." We decline Kremer's invitation to philosophical reflection and shall instead follow the clear mandates of the Revised Code and the Supreme Court of Ohio, which require exactly such protections as Kremer apparently considers so vexatious.

The trial court did not err in quashing Kremer's subpoena to the SMBO. Accordingly, Kremer's first assignment of error is overruled.

---

7. As the SMBO points out, at the time Kremer attempted to subpoena its records on April 7, 1994, he was already in possession of the documents used by the SMBO during the course of the administrative hearing stemming from the investigation.

## II

"The trial court erred in granting the Defendant/Appellee's Motion for Protective Order in quashing the subpoenas issued to Frederick L. Zuch, Paige Martin, and A. William Zavarello."

Kremer also issued subpoenas to three attorneys, seeking to depose them and to obtain certain documentary evidence. The trial court quashed all three subpoenas, ruling that Kremer was not entitled to the information he sought.

### A

We first address the subpoena issued to Frederick L. Zuch, the chief assistant prosecutor in the criminal division of the Summit County Prosecutor's Office. Zuch had been called as a witness by Cox during the preliminary injunction hearing pertaining to Cox's original lawsuit. Zuch had testified regarding a meeting that occurred between Zuch and another prosecutor, both of whom were representing Cox in his capacity as coroner during Cox's case, and several hospital officials. Zuch referred to a document prepared by the prosecutor's office to recall the names of the individuals present at the meeting. He testified that the prosecutor's office became involved because it was the legal representative of the coroner and Cox had complained on several occasions of pressure being placed on him by hospital personnel to curtail the proper function, and improperly employ the resources, of the coroner's office. Zuch also testified that, after investigation, his office did not file any charges.

Kremer sought to depose Zuch and compel production of the document to which he referred during his testimony. As support for his claim, Kremer cites Evid.R. 612, which permits an opposing party, under certain circumstances, to examine a document used to refresh a witness's recollection. However, in this case, the document sought was used to refresh a witness's memory in a separate lawsuit. Kremer provides nothing to support the contention that Evid.R. 612 pertains to such materials, nor did he request to examine the document when it was presented at the injunction hearing during Cox's lawsuit.

In addition, the state argues, documents prepared during the course of an investigation by the prosecutor's office are protected by the privilege delineated in R.C. 149.43(A)(2). Kremer makes no attempt to contest this assertion. Zuch testified that the prosecutor's office began an investigation into claims presented by Cox, in his capacity as Summit County Coroner, that he was being coerced by hospital officials to misappropriate county assets. R.C. 149.43(A)(2)(a) specifically exempts from disclosure confidential law enforcement records which, if released, might disclose the identity of a suspect who has not been charged with an

offense. See, generally, *State ex rel. Thompson Newspapers, Inc. v. Martin* (1989), 47 Ohio St.3d 28, 29–30, 546 N.E.2d 939, 940–942.

Zuch testified that the document to which he referred contained names of persons present at a meeting[8] called to investigate allegations that one or more of those persons had attempted to coerce a public official into abusing his position by (1) ceasing an investigation into the death of one of Kremer's patients and (2) using county facilities to conduct a training program for hospital pathology residents. The trial court was asked to review the document *in camera* and concluded that the document was covered by the statutory privilege.

■ The trial court further found that any communications between Zuch and Cox (as coroner) were protected under the rubric of the attorney-client privilege. R.C. 309.09(A) provides that the prosecutor's office is the legal representative of the coroner. Since Cox was acting in his capacity as coroner when he reported the threats to Zuch, and Zuch was acting as a prosecutor when he investigated Cox's allegations, it is apparent that the two were engaged in an attorney-client relationship. As the trial court found, there is nothing in the record to indicate that the protection of R.C. 2317.02(A), which makes confidential communications between attorney and client privileged, was waived by the coroner. Zuch testified only regarding Cox's reports of threats made to him as coroner and a meeting that took place during his office's investigation of an alleged attempt to coerce the coroner into compromising county facilities and assets. There is nothing to indicate, therefore, that Cox as coroner waived the privilege accorded to his communications with Zuch (nor does Kremer argue that this is the case). Moreover, it is nowhere suggested or explained how such statements would be relevant to Kremer's claims as advanced in this lawsuit.

We further note that, since Cox's statements were made in his capacity as coroner, they are protected by a qualified immunity codified in R.C. 2744.03(A)(6). While that privilege may be overridden by evidence that the statements were made with malice, for example, Kremer has presented no evidence to support a claim that any statements made by Cox to Zuch were made with malice against Kremer. Therefore, Kremer's second assignment of error is overruled insofar as it pertains to the quashing of the subpoena issued to Frederick L. Zuch.

### B

We next address the subpoenas issued to Cox's personal attorneys, Paige Martin and A. William Zavarello. Both attorneys had represented Cox during the suit he filed personally. Zavarello also represented Cox in the instant action.

---

8. Neither Kremer nor Cox was present at that meeting.

Kremer sought to depose both attorneys, ostensibly in order to determine whether Cox's lawsuit had been initiated with malice against Kremer. Kremer's complaint in this case alleges that Cox and his attorneys made defamatory statements about Kremer in the complaint and other pleadings filed in Cox's prior lawsuit.[9] The trial court quashed both subpoenas, reasoning that Cox had not waived the attorney-client privilege with regard to either Martin or Zavarello.

Kremer argues that, since Cox defended against Kremer's lawsuit in part by relying on the defense of advice of counsel, Cox waived the privilege. An examination of the record indicates that when Cox filed his motion for summary judgment on May 12, 1994, he attached two affidavits. The first of these, which was Cox's own affidavit, stated the following:

"I sought the advice of Attorney A. William Zavarello concerning my legal rights against all of the Defendants in Civil Case No. CV 93–06–2139 [Cox's suit against Summa] for the June 30, 1993 termination from Summa. I discussed with Mr. Zavarello all the facts which were within my knowledge concerning all of the Defendants to that lawsuit. After Mr. Zavarello consulted with co-attorney, Paige Martin, I was advised that I had probable cause for filing a lawsuit against all of the Defendants in Case No. [CV] 93–06–2139. Based on counsel's advice, I decided to proceed with that claim. My sole purpose in filing that claim was to protect my legal rights. Once the purposes of that lawsuit were fulfilled, my attorney terminated the litigation. I was advised by counsel that we should voluntarily dismiss Dr. Kremer from that lawsuit, even though he refused to participate in settlement."

Also attached to Cox's motion was another affidavit, signed by A. William Zavarello. In it, Zavarello stated:

"Dr. William Cox, the Summit County Coroner, consulted me concerning his legal rights. Dr. Cox fully disclosed the facts of his predicament with me. In addition, I questioned Dr. Cox concerning information which would be necessary before instituting a lawsuit. Based upon the facts obtained from Dr. Cox and consultation with co-counsel, Paige Martin, who routinely handles employment claims, we determined that there was probably [sic] cause to file Summit County Common Pleas Civil Case No. CV 93–06–2139. The purpose of filing that lawsuit was to obtain compensatory and injunctive relief. * * * Civil Case No. CV 93–06–2139 was not filed for an ulterior purpose or based on malicious feelings toward Dr. Kremer."

---

9. These were *not* the same defamatory statements Kremer claims were made by Cox as coroner to the media and to the relative of one of Kremer's deceased patients. A discussion of those claims is presented in Section III D, below.

Nearly six months later, in October 1994, Kremer issued the subpoenas to Zavarello and Martin. He contends that, since Cox injected these statements into the case, he should have been entitled to depose Zavarello and Martin to ascertain the nature and extent of Cox's communications to them regarding Kremer; Kremer argues that such an inquisition may have enabled him to support his claims by providing evidence of malice on the part of Cox. After the trial court quashed the subpoenas, Cox invoked the advice of counsel in response to numerous questions in his deposition, repeatedly stating that, for an answer to his questions, Kremer's attorney would "have to ask Paige Martin and Bill Zavarello."

Generally, communications between a client and his attorney are privileged from discovery. R.C. 2317.02(A). However, the privilege may be deemed to be waived, either expressly or impliedly, under certain circumstances, such as when the communications are made to a third party. *Mid–American Natl. Bank & Trust Co. v. Cincinnati Ins. Co.* (1991), 74 Ohio App.3d 481, 488, 599 N.E.2d 699, 703; *State v. Post* (1987), 32 Ohio St.3d 380, 513 N.E.2d 754, paragraph one of the syllabus, certiorari denied (1988), 484 U.S. 1079, 108 S.Ct. 1061, 98 L.Ed.2d 1023. We recognize that the attorney-client privilege may indeed be waived when, as here, the client and attorney deliberately place the contents of such communications in issue by presenting sworn statements and raising advice of counsel as a defense. See, *e.g., Trans World Airlines v. Hughes* (1964), 332 F.2d 602, 615, certiorari denied (1965), 380 U.S. 248, 85 S.Ct. 934, 13 L.Ed.2d 817; *Handgards, Inc. v. Johnson & Johnson* (N.D.Cal.1976), 413 F.Supp. 926.

In considering a similar issue regarding privileged documents, the Supreme Court of Ohio, citing *Handgards,* has stated that such an argument "would have merit if it were addressed to the attorney-client privilege of R.C. 2317.02(A)." *In re Election of November 6, 1990 for the Office of Attorney General of Ohio* (1991), 57 Ohio St.3d 614, 615, 567 N.E.2d 243, 244. However, in that case, the claim pressed was for exemption under Civ.R. 26(B)(3); the court held that that rule did not warrant production of the information sought. That is not the case here; Cox invoked the statutory privilege, and Kremer contends that, by introducing sworn testimony on the subject of his communications with counsel, Cox waived that privilege.

However, we note that the "advice of counsel" defense was raised only, if at all, with regard to Kremer's claims regarding the malicious filing of Cox's lawsuit and the defamatory statements made in the complaint and proceedings in that case. Therefore, even though the trial court erred in quashing the subpoenas, that error would only be relevant insofar as prejudice could be shown

regarding Kremer's claims for defamatory statements alleged to have been made in the course of the prior lawsuit.

The error would be harmless, since statements made in a judicial proceeding are privileged from claims of defamation:

"[U]nder the doctrine of absolute privilege in a judicial proceeding, a claim alleging that a defamatory statement was made in a written pleading does not state a cause of action where the allegedly defamatory statement bears some reasonable relation to the judicial proceeding in which it appears." *Surace v. Wuliger* (1986), 25 Ohio St.3d 229, 233, 25 OBR 288, 292, 495 N.E.2d 939, 942–943. See, also, *Kirshner v. Shinaberry* (1989), 64 Ohio App.3d 536, 539–540, 582 N.E.2d 22, 23–24.

Kremer has made no suggestion or showing that the statements he claims were defamatory were made outside the proceedings or were unrelated to Cox's claims. In fact, Cox alleged, as part of his suit, that he was being pressured to cease his coroner's investigation into the death of Kremer's patients. Thus, statements made during the prior proceeding would be protected from Kremer's defamation claims.

Since the statements in question were made in a judicial proceeding and thus are insulated from defamation claims, it does not appear that Kremer suffered any prejudice to his defamation claim as a result of the trial court's quashing of the subpoenas. Moreover, Kremer has not demonstrated how a showing of malice on the part of Cox, even if discovered, would have altered the disposition of any other claim he has made.[10] The error in quashing the subpoenas to Martin and Zavarello, therefore, was harmless given the nature of the claims made by Kremer.

Accordingly, Kremer's second assignment of error is overruled.

### III

"The trial court erred in granting summary judgment in favor of the Defendants/Appellees, William A. Cox, M.D. and WAC, M.D., Inc., on the claims for defamation, abuse of authority, and negligent and intentional infliction of emotional distress."

In his third assignment of error, Kremer challenges the trial court's grant of summary judgment to Cox on four other counts originally contained in Kremer's complaint. We have rearranged them to facilitate discussion.

---

**10.** Kremer does not contend on appeal that his claim for malicious prosecution should have been allowed to proceed.

In reviewing a trial court's entry of summary judgment, an appellate court applies the same standard used by the trial court. *Perkins v. Lavin* (1994), 98 Ohio App.3d 378, 381, 648 N.E.2d 839, 840. Pursuant to Civ.R. 56(C), summary judgment is proper if "(1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing the evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the nonmoving party." *State ex rel. Howard v. Ferreri* (1994), 70 Ohio St.3d 587, 589, 639 N.E.2d 1189, 1192. Doubts must be resolved in favor of the nonmoving party. *Horton v. Harwick Chem. Corp.* (1995), 73 Ohio St.3d 679, 686, 653 N.E.2d 1196, 1201. Since only legal questions exist, no special deference is to be afforded the trial court upon a review of an entry of summary judgment. *Lorain Cty. Bd. of Commrs. v. United States Fire Ins. Co.* (1992), 81 Ohio App.3d 263, 267, 610 N.E.2d 1061, 1063. We will, therefore, review the matter *de novo*. *Tyler v. Kelley* (1994), 98 Ohio App.3d 444, 446, 648 N.E.2d 881, 882.

Initially, we note that, with respect to the trial court's rulings on Kremer's claims for abuse of authority, intentional infliction of emotional distress, and negligent infliction of emotional distress, Kremer has failed to argue or support his claims in any way. Rather, Kremer states in his brief that "no discussion is presented" regarding those claims. Pursuant to App.R. 16(A) and Loc.R. 13, briefs are to contain a separate discussion of each error alleged, as well as argument and authority supporting the party's position. Pursuant to App.R. 12(A)(2), an appellate court may disregard errors not separately assigned and argued in an assignment of error. *Akron v. Wendell* (1990), 70 Ohio App.3d 35, 46, 590 N.E.2d 380, 387; *Ferreri v. McShane* (Oct. 17, 1990), Summit App. No. 14433, unreported, 1990 WL 163907.

With regard to these claims, Kremer's brief contains neither argument nor authority. It is not the function of this court to construct a foundation for a party's claims; failure to comply with the rules governing practice in the appellate courts is a tactic which is ordinarily fatal. Moreover, even if we were to disregard the obvious flaw in the presentation of these claims, they would be found to be lacking in merit.

## A. Abuse of Authority

In the fifth count of his complaint, Kremer alleges that Cox "abused his authority" as coroner by changing the death certificates of two of Kremer's patients. However, as the trial court correctly points out, Ohio law does not recognize a cause of action for "abuse of authority." Moreover, Kremer has

provided no support whatsoever for this claim. Kremer's third assignment of error is overruled insofar as it pertains to his claim for "abuse of authority."

## B. Negligent Infliction of Emotional Distress

In the seventh count of his complaint, Kremer alleges that Cox's actions resulted in negligent infliction of emotional distress to Kremer. However, Ohio courts have restricted recovery on such claims "to such instances as where one was a bystander to an accident or was in fear of physical consequences to his own person." *Lawyers Coop. Publishing Co. v. Mucthing* (1992), 65 Ohio St.3d 273, 280, 603 N.E.2d 969, 974; *Westenbarger v. St. Thomas Med. Ctr.* (June 29, 1994), Summit App. No. 16119, unreported, at 11–12, 1994 WL 286022. Kremer has neither alleged nor shown that he was in proximity to or in apprehension of such occurrences. Kremer's third assignment of error is overruled insofar as it pertains to this claim.

## C. Intentional Infliction of Emotional Distress

In the sixth count of his complaint, Kremer alleges that Cox intentionally caused him emotional distress. "One who by extreme and outrageous conduct intentionally or recklessly causes serious emotional distress to another is subject to liability for such emotional distress * * *." *Yeager v. Local Union 20* (1983), 6 Ohio St.3d 369, 6 OBR 421, 453 N.E.2d 666, syllabus. The Supreme Court of Ohio has defined "extreme and outrageous conduct" in the following manner:

"It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* at 374–375, 6 OBR at 426, 453 N.E.2d at 671.

In *Paugh v. Hanks* (1983), 6 Ohio St.3d 72, 78, 6 OBR 114, 119, 451 N.E.2d 759, 765, the court defined "serious emotional distress" as "emotional injury which is both severe and debilitating * * * where a reasonable person, normally constituted, would be unable to cope adequately with the mental distress engendered by the circumstances of the case." See, also, *Simonelli v. Anderson Concrete Co.* (1994), 99 Ohio App.3d 254, 259–261, 650 N.E.2d 488, 491–493.

Kremer has not alleged that any emotional stress he has suffered rises to this level. To the contrary, he asserts that he is capable of coping and that it has not negatively affected his abilities as a physician; he testified that he was as

competent and capable as ever, and that his practice had declined, not as a result of his inability to deal with stress, but because other doctors stopped referring patients to him.

Kremer's third assignment of error is overruled insofar as it pertains to his claim of intentional infliction of emotional distress.

## D. Defamation

In counts one and two of his complaint, Kremer alleges that Cox made defamatory statements about Kremer. According to Kremer, these statements occurred in three separate manifestations: (1) a letter sent by Cox to the next of kin of one of Kremer's deceased patients ("Patient A"), informing that person that the patient's death certificate was being changed; (2) statements made to the media regarding the changing of that death certificate; and (3) statements made to the media regarding his determination of the cause of death of another of Kremer's deceased patients ("Patient B").

The letter from Cox to Patient A's family is presented by Kremer as being libelous. The statements made by Cox which were reported in the local media are alleged to be slanderous. We will consider each argument separately.

## 1. QUALIFIED PRIVILEGE

Cox asserts that the statements of which Kremer complains were made in Cox's official capacity as coroner. Therefore, he claims, a "qualified privilege" attaches to them.

"Where the circumstances of the occasion for the alleged defamatory communications are not in dispute, the determination of whether the occasion gives the privilege is a question of law for the court.

"No single statement or formula can sufficiently describe when publication of defamatory matter should be conditionally or qualifiedly privileged. It is generally agreed, however, that * * * [a] publication is privileged when it is 'fairly made by a person in the discharge of some public or private duty, whether legal or moral, or in the conduct of his own affairs, in matters where his interest is concerned.'

" ' " ' * * * The essential elements of a conditionally privileged communication may accordingly be enumerated as good faith, an interest to be upheld, a statement limited in its scope to this purpose, a proper occasion, and publication in a proper manner and to proper parties only. The privilege arises from the necessity of full and unrestricted communication concerning a matter in which the parties have an interest or duty, and is not restricted within any narrow limits.' " '

" * * * [T]he privilege does not attach to the communication, but to the occasion on which it is made." (Citations omitted.) *A & B–Abell Elevator Co. v. Columbus/Cent. Ohio Bldg. & Constr. Trades Council* (1995), 73 Ohio St.3d 1, 7–9, 651 N.E.2d 1283, 1290.

 Cox has asserted that his statements were made in good faith and pursuant to his duties as coroner. If a privileged situation is found to exist, then once such an assertion of good faith is made, the burden falls to Kremer to establish that Cox acted with actual malice in order to overcome the privilege. 73 Ohio St.3d at 10, 651 N.E.2d at 1291, citing *Jacobs v. Frank* (1991), 60 Ohio St.3d 111, 119, 573 N.E.2d 609, 616.

## 2. COX'S LETTER

 Pursuant to R.C. 313.14, the county coroner "shall notify any known relatives of a deceased person who meets death in the manner described by section 313.12 of the Revised Code by letter or otherwise." R.C. 313.12 provides that such notification should be made in the event of any death which occurs in "any suspicious or unusual manner." Since Cox had changed the death certificate of Patient A to indicate an accidental death due to excessive blood loss, he was required to notify her next of kin.[11]

It therefore appears that Cox's letter was made pursuant to his duties as coroner, and an examination of the letter does not disclose that Cox exceeded the proper scope of those duties. Accordingly, we find that the trial court properly concluded that the letter was subject to the qualified privilege.

 " 'When a defendant possesses a qualified privilege regarding statements contained in a published communication, that privilege can be defeated only by a clear and convincing showing that the communication was made with actual malice. In a qualified privilege case, 'actual malice' is defined as acting with knowledge that the statements were false or acting with reckless disregard as to their truth or falsity.'

"This standard carries the requirement that we conduct an independent review of the sufficiency of the evidence." *A & B–Abell,* 73 Ohio St.3d at 11–12, 651 N.E.2d at 1292, quoting *Jacobs v. Frank* (1991), 60 Ohio St.3d 111, 573 N.E.2d 609, paragraph two of the syllabus.

---

11. Kremer makes the argument that, even if Cox were so obligated, the information he disclosed went beyond that necessary to meet this obligation. However, when issuing such a report, a coroner is not limited to describing only physical or physiological facts, but instead is to describe the mode, manner, and cause of death, along with any relevant information regarding the basis for such a conclusion. See *State ex rel. Blair v. Balraj* (1994), 69 Ohio St.3d 310, 311–312, 631 N.E.2d 1044, 1045–1047.

Moreover, "Actual malice cannot ' "be implied from the character and content of a publication. * * * It is not sufficient for a libel plaintiff to show that an interpretation of facts is false; rather, he must prove with convincing clarity that defendant was aware of the high probability of falsity." ' * * *

" * * * 'Mere negligence is not enough to establish actual malice.' '[R]eckless conduct is not measured by whether a reasonably prudent man * * * would have investigated before publishing. There must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication.' " (Citations omitted.) 73 Ohio St.3d at 13, 651 N.E.2d at 1293.

A review of the record leads to the conclusion that Kremer has failed to carry his burden with regard to establishing actual malice. In his deposition, Kremer disputes Cox's conclusions regarding the cause of Patient A's death; he offers nothing, however, to establish that Cox believed his conclusions to be false or was recklessly ignorant of their veracity. Cox testified that he believed his conclusions were accurate, since the SMBO had launched an investigation of the case based upon indications that Patient A may have died from causes other than those listed by Kremer.[12] Cox continued to adhere to this position throughout the proceedings below, and Kremer offered no evidence or testimony, other than his own vague disagreement, to challenge Cox's interpretation of the evidence.

Accordingly, we conclude that, with respect to the letter sent to the family of Patient A, Kremer failed to prove actual malice on the part of Cox. The trial court properly granted summary judgment to Cox on that issue, and Kremer's third assignment of error is overruled as to that ground.

### 3. MEDIA ARTICLES

Kremer also asserted that Cox defamed him in statements made to and reported by various media outlets regarding Patient A and Patient B.

It is apparent from a reading of the newspaper articles that Cox was interviewed regarding his decisions as, in his capacity as, and was speaking as, the Summit County Coroner. Cox was repeatedly described in his official capacity, and quotes were directly attributed to him as the Summit County Coroner. Kremer acknowledged as much in his own deposition testimony.

---

12. Kremer had listed the cause of death as "cardiorespiratory failure due to or as a consequence of peripheral vascular disease, or * * * cardiovascular disease." The document from the SMBO, which was prepared by an SMBO investigator and later given to Cox by a television reporter, indicated that the patient had actually died as a result of blood loss in excess of two thousand milliliters. Cox testified that he examined the patient's chart, verified that such blood loss had indeed occurred, and changed the death certificate accordingly.

## A. PATIENT A

 Cox was interviewed regarding his letter to Patient A's family. The articles repeat various passages contained in the letter, as well as quotations from Cox taken from a subsequent telephone interview. As discussed above, the quotations from the letter are cloaked with a qualified privilege that Kremer has failed to overcome. With regard to statements made during the telephone interview, it is clear that Cox was speaking in his capacity as coroner.

In addition to the qualified privilege discussed in the preceding section, R.C. 2744.03(A)(6) provides:

"In a civil action brought against a political subdivision or an employee of a political subdivision to recover damages for injury * * * or loss to persons or property allegedly caused by any act or omission in connection with a governmental or proprietary function * * * [t]he employee is immune from liability unless * * * (a) [h]is acts or omissions were manifestly outside the scope of his employment or official responsibilities; [or] (b) [h]is acts or omissions were with malicious purpose, in bad faith, or in a wanton and reckless manner."

The quotations appearing in the article which are attributed to Cox directly relate to, and provide a more detailed and understandable explanation of, the conclusions expressed by Cox in the letter to Patient A's family. They are not, therefore, "manifestly outside the scope" of his duties as coroner, since they are directly relevant to matters determined in his capacity as coroner. Moreover, Kremer still has not offered any evidence of actual malice, bad faith, or reckless disregard beyond that described above. Accordingly, Kremer's third assignment of error is overruled insofar as it pertains to statements to the media regarding Patient A.

## B. PATIENT B

 Kremer also asserts that Cox defamed him in statements made to the media regarding Patient B. Cox ruled that Patient B suffered accidental death as a result of a postoperative infection. In making his determination, Cox testified that he relied on (1) the report of the pathologist who performed the autopsy on patient B and (2) the report of an outside expert who reviewed the autopsy findings. Cox testified that, in completing the death certificate, he included the pathologist's opinion as to the cause and manner of death and did not substitute his own.

The reviewing pathologist determined that Patient B died as a result of postoperative abscess and infection. Cox stated that as the cause of death. The other expert was not conclusive as to the manner of death; he recognized that an infection had indeed occurred, but could not state from where or as a result of

which procedure the infection had originated. Cox publicly questioned why the infection and abscess were not diagnosed more quickly, but ruled the death accidental.[13]

Once again, Kremer provides no basis for his assertions that Cox's statements were false or made with reckless disregard for the truth. Kremer disagrees with the diagnosis of the cause and manner of death, but provides nothing to substantiate the notion that Cox harbored doubt as to the accuracy of his official conclusions. Cox's statements were made in the context of his official functions, and related to public records issued by his office. Accordingly, Kremer's third assignment of error is overruled insofar as it pertains to Cox's statements regarding Patient B.

Having considered each of Kremer's arguments regarding the award of summary judgment granted to Cox by the trial court, we conclude that summary judgment was proper in each instance and overrule Kremer's third assignment of error.

Accordingly, the judgment of the trial court is affirmed with respect to Kremer's assignments of error and Cox's first two assignments of error. The judgment of the trial court is reversed with respect to Cox's third assignment of error, and the matter is hereby remanded for further proceedings in accordance with this decision.

*Judgment affirmed in part,*
*reversed in part*
*and cause remanded.*

QUILLIN, P.J., concurs in part and dissents in part.

EDWARD J. MAHONEY, J., concurs in judgment only and dissents in part.

QUILLIN, Presiding Judge, concurring in part and dissenting in part.

I would affirm the judgment *in toto.*

I agree with Judge Mahoney that Cox should not be permitted to agree to try the case under one theory, and then, after losing, assert an opposite theory on appeal. The judgment against Cox should be affirmed. I concur in the judgment as to Kremer's assignments of error.

---

13. According to Cox's testimony, he would have preferred to indicate the manner of death as a "therapeutic misadventure." However, Cox explained that, between the death of Patient A in 1987 and Patient B in 1992, the SMBO had mandated that coroners could no longer use that appellation; according to Cox, all deaths of this type were *required* to be described as "accidental." This testimony was corroborated by the testimony of Dr. Roberto Ruiz, another pathologist deposed by Kremer.

EDWARD J. MAHONEY, Judge, concurring in judgment only and dissenting in part.

I concur in the judgment that the trial court erred in not granting the motion for a new trial. However, I disagree that the new trial should be granted as contrary to law under Civ.R. 59(A)(7). This case was tried under the theory that Cox had probable cause to bring his action. Cox's attorney strongly argued and virtually conceded that issue. How can we then grant a new trial for failure to prove an issue that was really a nonissue and conceded? I believe that the error was on the weight of the evidence as to malice, damages, and proximate cause. See Civ.R. 59(A)(6).

My dissent is to the overruling of Kremer's assignment of error dealing with the quashing of subpoenas for Zuch, Martin, and Zavarello.

Cox claims privileges in several matters and raised the defense of advice of counsel. The error in denying the attempt to depose these attorneys was not harmless. It cut off a potential source of evidence, if any, as to malice and intent. The attorney-client privilege was definitely waived by raising the advice-of-counsel defense. Depositions of various counsel may also have produced sufficient evidence of malice to at least raise the issue of whether the coroner's privileges were also waived. Fairness requires that the court not permit the attorney-client privilege and/or coroner's privilege be used as weapons instead of shields.

EDWARD J. MAHONEY, J., retired, of the Ninth Appellate District, sitting by assignment.