OPINION
{¶ 1} Appellant, Jonathan D. McMillin ("McMillin") appeals his conviction in the Common Pleas Court of Union County of rape of a child under age 13 and sentence of four years at the Ohio Department of Rehabilitation and Corrections.
 {¶ 2} During the time period of April to May of 2000, McMillin had Terri and her cousin, Amber, over to his parent's residence at 141 Hillcrest Mobile Home Park. Both Terri and Amber reported to Marysville Police that McMillin provided them with alcoholic beverages. Each of the girls reported drinking a 40 oz. bottle of King Cobra beer. At trial, Terri testified that she and Amber were at Amber's house and McMillin came over. Terri testified that the three of them hung out for awhile and then she and McMillin went to his parent's house. Terri stated they went to McMillin's bedroom where she and McMillin kissed for about five or ten minutes before taking off their clothes. Terri stated that she did not physically resist McMillin's sexual advances and that she and McMillin engaged in vaginal intercourse on his bed. Terri testified that when she and McMillin exited the bedroom Amber was in the living room of McMillin's house. Terri stated that she, McMillin and Amber then went back to Amber's house. Terri was only twelve years old at the time in which she stated she engaged in sexual intercourse with McMillin.
 {¶ 3} McMillin was indicted on February 14, 2003, on one count of rape, in violation of R.C. 2907.02(A)(1)(b), a felony of the first degree. After a one day jury trial on June 2, 2003, McMillin was found guilty of rape of a child under age 13. The testimony at trial centered on the date of the sexual conduct since the age of Terri was an essential element of the offense with which McMillin was charged. Terri's date of birth is June 16, 1987. Terri testified that the sexual conduct occurred at the end of April or beginning of May in 2000, in which Terri would have been twelve years old. Terri and Detective Chad Seeberg were the only witnesses that testified at trial.
 {¶ 4} McMillin was sentenced to four years at the Ohio Department of Rehabilitation and Correction. It is from this conviction that McMillin now appeals, raising the following four assignments of error:
The jury verdict was against the manifest weight of the evidence.
 The defendant was deprived of due process of law because of ineffectiveassistance of counsel.
 The State of Ohio violated the defendants (sic) Fifth Amendmentprotection against self incrimination causing prejudice that resulted indefendant receiving an unfair trial.
 It was error for the court to deny counsel's request to voir dire thejuror when it was dicovered (sic) during trial that a juror knew anotheralleged victim of GSI by the defendant and it was error for the court toallow prior bad acts.
 {¶ 5} We elect to address McMillin's fourth assignment of error first. McMillin appears to argue two separate allegations of error in his fourth assignment of error. McMillin first argues that it was error for the court to deny trial counsel's request to voir dire the juror who indicated she might know one of the prior victims of McMillin. Second, McMillin argues that it was error for the court to allow evidence of prior bad acts by McMillin.
 {¶ 6} As a preliminary matter, it should be noted that McMillin's failure to set forth the reasons for his contentions in the fourth assignment of error violates the provisions of App.R. 16(A)(7). Furthermore, pursuant to App.R. 12(A)(2), we are not required to address issues which are not argued separately as assignments of error or arguments not presented in compliance with App.R. 16(A). Kremer v. Cox
(1996), 114 Ohio App.3d 41, 682 N.E.2d 1006; Hawley v. Ritley (1988),35 Ohio St.3d 157, 519 N.E.2d 390. However, in the interests of justice and finality, we elect to review the two issues raised by McMillin in his fourth assignment of error.
Other Acts Evidence
 {¶ 7} We first address McMillin's argument that the trial court erred by allowing evidence of McMillin's prior bad acts without a proper foundation. McMillin asserts that the prejudicial nature of the evidence of his prior conviction of gross sexual imposition likely affected the jury's outcome and denied him a fair trial.
 {¶ 8} The State is prohibited by Evid.R. 404(A) from offering extrinsic evidence of the defendant's bad character to prove that the defendant engaged in conforming conduct to commit the crime alleged. In addition, evidence of prior or subsequent crimes, wrongs or acts that are wholly independent of the offense for which the defendant is currently charged is generally not admissible in the defendant's criminal trial.State v. Smith (1990), 49 Ohio St.3d 137, 139, 551 N.E.2d 190. Exceptions to this rule are listed in Evid.R. 404(B) and the admission of such evidence is limited by Evid.R. 403.
 {¶ 9} McMillin asserts that the trial court improperly allowed testimony of Detective Seeberg regarding prior bad acts of McMillin. Specifically, McMillin asserts that the testimony regarding a prior conviction for gross sexual imposition involving a non-witness, Christa, was improper, as well as testimony concerning a runaway juvenile complaint involving a female named Amanda.
 {¶ 10} The State argues that McMillin's prior bad acts are admissible under Evid.R. 404(B), which provides:
Evidence of other crimes, wrongs, or acts is not admissible to provethe character of a person in order to show that he acted in conformitytherewith. It may, however, be admissible for other purposes, such asproof of motive, opportunity, intent, preparation, plan, knowledge,identity, or absence of mistake or accident.
However, the State does not specify the purpose under Evid.R. 404(B) for which it offered the prior bad acts.
 {¶ 11} The following portion of the trial transcript reflects the testimony of Detective Seeberg regarding his prior involvement with McMillin, specifically with the alleged incident involving Amanda.
Q: Detective Seeberg, are you aware of if the defendant ran awayanytime in the year 2000?
 Mrs. Music: Objection.
 The Court: Sustained.
 Q: What other investigations did you become involved with in the year2000 with the defendant?
 Mrs. Music: Objection.
 The Court: Sustained.
 Q: Detective, are you aware if the defendant was in fact in UnionCounty after June 9th, 2000?
 A: Yes, he was in Union County after that date.
 Q: Were you contacted in June of 2000 regarding the defendant?
 A: I was not specifically contacted. Our agency was contacted.
 Q: Do you know what that agency, what that was for?
 A: Yes, sir. It was on the early hours of June 10th, one of ourpatrol officers took an unruly or runaway juvenile complaint involving afemale named Amanda , who, at the time Mr. McMillin was her boyfriend.
 Mrs. Music: Objection, move to strike as being irrelevant.
 Mrs. Boggs: Your Honor.
 The Court: Overruled.
 Mrs. Boggs. Thank you.
 The Witness: On that date Mr. Reeder reported that he arrived home atapproximately 10:45 on the, on Friday evening, called the police onSaturday morning, June 10th, and that he found Mr. McMillin at hisapartment with a 16-year-old daughter. When he walked in they were nude onthe couch, or she was nude on the couch. They then left while he waschanging clothes, and Mr. McMillin was later brought to the PoliceDepartment on Saturday, June 10th, in the evening, by his parents[.]
June 2, 2003, Tr. 59-60.
 {¶ 12} When the prosecution asked Detective Seeberg if he was aware if the defendant left the county after that incident, trial counsel objected on the grounds of relevance. The prosecution stated the evidence was offered to establish the whereabouts of McMillin during the specified time. The prosecution was attempting to show that McMillin was not in Union County at the specified time and therefore the sexual conduct had to have occurred prior to that time. However, upon the prosecution's attempt to admit the evidence, it was excluded by the trial court. No further testimony was heard regarding the incident with Amanda.
 {¶ 13} While the State appears to offer a purpose for the admission of the testimony regarding McMillin's prior bad act involving Amanda, the purpose stated does not fit within one of the recognized exceptions to the exclusion of the evidence under Evid.R. 404(A). It was improper for the State to generally inquire of Detective Seeberg regarding all investigations he had been involved in regarding McMillin. One of the exceptions for allowing evidence of prior convictions is Evid.R. 609(A)(2), which provides:
Notwithstanding Evid.R. 403(A), but subject to Evid.R. 403(B), evidencethat the accused has been convicted of a crime is admissible if the crimewas punishable by death or imprisonment in excess of one year pursuant tothe law under which the accused was convicted and if the court determinesthat the probative value of the evidence outweighs the danger of unfairprejudice of confusion of the issues, or of misleading the jury.
Evid.R. 609(A)(2) is not applicable in this case because there is nothing in the record to show there was a conviction of McMillin regarding this incident and the State was not using the evidence to impeach McMillin. In fact, McMillin did not testify at trial.
 {¶ 14} The other recognized exception regarding evidence of prior crimes, wrongs or acts is under Evid.R. 404(B). As mentioned earlier, such evidence is admissible only if the proponent of the evidence can show it is "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Evid. R. 404(B). The State has not specifically indicated which purpose the evidence would be admissible to prove. Furthermore, in our review of the record we conclude that the above testimony of Detective Seeberg was not admissible for any purpose under Evid.R. 404(B). Therefore, the admission of the testimony of Detective Seeberg regarding McMillin's prior bad acts was improper.
 {¶ 15} Even if we concluded that such admission was not prejudicial error that likely affected the outcome of McMillin's trial, the record shows another improper use of prior bad acts evidence that is certainly demonstrative of prejudicial error.
 {¶ 16} The following reflects the testimony of Detective Seeberg regarding a prior conviction of McMillin involving Christa.
Q: Detective, have you been involved in any other criminalinvestigations involving Jonathan McMillin?
 A: Yes, I have.
 Q: Have any of those investigations been sexual in nature?
 A: Yes, they have.
 Mrs. Music: Objection.
 Mr. Schrader: Your Honor —
 The Court: Overruled.
 Mrs. Music: Okay.
 Q: Who was the victim in that case?
 A: The victim was Christa .
 Q: Detective, I've handed you what has been marked as State's ExhibitTwo. Can you explain to the Court what I've just handed you.
 A: Yes. It's a sheet from the Marysville Municipal Court, CaseNumber CRB0100956, State of Ohio versus Jonathon D. McMillin.
 Q: Are you aware who the victim was in that case?
 A: Yes, sir. That was Christa .
 Q: Who was the defendant in that case?
 A: The defendant was Mr. McMillin.
 Q: Could you please tell the Court what he was convicted of.
 Mrs. Music: Objection.
 The Court: Sustained.
June 2, 2003, Tr. 61-62.
 {¶ 17} The above testimony by Detective Seeberg was also improper in that the evidence of the conviction and the testimony of the prior bad acts are not admissible under either Evid.R. 609(A)(2) or Evid.R. 404(B). In addition, the jury was never allowed to hear what McMillin had been previously convicted of after the trial court had allowed them to hear that there was a conviction that was sexual in nature, and even allowed them to hear the victim's name. The jury was then left to guess of what McMillin had been previously convicted.
 {¶ 18} "A trial court has broad discretion with respect to the admission or exclusion of evidence, and its decision in such matters will not be reversed on appeal unless the trial court has abused its discretion and material prejudice has resulted therefrom." State v. Hawn
(2000), 138 Ohio App.3d 449, 457, 741 N.E.2d 594. Abuse of discretion implies that the decision of the trial court was unreasonable, arbitrary or unconscionable. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217,450 N.E.2d 1140. We conclude that the trial court abused its discretion in allowing the testimony of Detective Seeberg regarding McMillin's prior bad acts to be heard by the jury without the State laying the proper foundation. Furthermore, the trial court did not give the jury an instruction to disregard the testimony at any time during the trial. The admission of the evidence was prejudicial to McMillin, especially when taken in conjunction with the other errors of the trial court discussed below.
Trial Court's Denial of Request to Voir Dire Juror
 {¶ 19} McMillin also argues in his fourth assignment of error that the trial court erred by denying trial counsel's request to inquire about the impartiality of a juror who indicated she might know a prior victim of McMillin. The following interaction took place on the record.
The Court: The one asked the question — what is says is, "Mayknow Christa . Didn't recognize the name before.["] And that's signedby Juror Number Ten, Beth Coggins. And I would suggest that — Iassume I need probably — I don't know.
 Mr. Schrader: She's not a witness in this case.
 Mrs. Boggs: Your Honor, if she hasn't indicated on that note it's goingto cause her any trouble in deliberations, as Mr. Schrader said, she'snot going to be a witness in the State's case. I don't have anyobjection.
 Mrs. Music: I would agree with the State.
 The Court: All right. Then I'm going to deposit it with the courtreporter so it's there as part of the record.
 Mrs. Music: Okay. Can the Court ask her whether that renders herimpartial?
 The Court: I'm not going to do that. Based upon what you just said tome, I think that's probably right. The only thing I can see is, if shewere a witness, it might make a difference, but if she's not a witness—
 Mrs. Music: Okay.
June 2, 2003, Tr. 49-50.
 {¶ 20} The trial judge has discretion over the scope, length, and manner of voir dire. See State v. LaMar, 95 Ohio St.3d 181,2002-Ohio-2128, 767 N.E.2d 166, at ¶ 40; State v. Getsy,84 Ohio St.3d 180, 190, 1998-Ohio-533, 702 N.E.2d 866. We believe this discretion extends to whether a trial judge finds it appropriate to conduct a voir dire of a juror at a particular time in the proceeding. Accordingly, we will not find prejudicial error in a trial court's decision to conduct voir dire or how the voir dire is conducted unless the appellant can show "a clear abuse of discretion." State v. Cornwell,86 Ohio St.3d 560, 565, 1999-Ohio-125, 715 N.E.2d 1144. As we stated above, abuse of discretion implies that the trial court's decision was unreasonable, arbitrary or unconscionable. Blakemore, 5 Ohio St.3d 217.
 {¶ 21} Under the circumstances in this case, the trial court abused its discretion by failing to voir dire the juror at any time during the proceeding since the jury later heard testimony regarding Christa. While the trial court was not initially aware of the significance of the juror knowing Christa since she was not a witness in the case, the trial court committed error by allowing testimony regarding Christa at a later point in the trial, when the trial court should have been aware of such significance. Prejudicial error resulted from the combined errors of the trial court in not questioning the juror regarding her knowledge of the victim Christa and her impartiality regarding the case and the admission of the testimony of the prior bad acts of McMillin, especially the testimony regarding Christa after a juror had indicated possible knowledge of that victim.
 {¶ 22} Accordingly, we sustain McMillin's fourth assignment of error.
 {¶ 23} In his third assignment of error, McMillin asserts that his Fifth Amendment right against self-incrimination was violated, thereby denying him a fair trial. McMillin's argument concerns the testimony of Detective Seeberg that McMillin chose not to make a statement to the Marysville Police Department.
 {¶ 24} McMillin acknowledges that trial counsel did not object to the testimony regarding his refusal to make a statement to police. Failure by a party to object at trial waives the claim on appeal. Statev. Webb, 70 Ohio St.3d 325, 1994-Ohio-425, 638 N.E.2d 1023. Thus, this court will review this assertion under the plain error standard. "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." Crim.R. 52(B). The rule requires that a reviewing court find three things in order to correct an error that was not timely objected to at trial. First, there must be an error. Second, the error must be an obvious defect in the trial proceedings. Finally, the error must have affected substantial rights, which has been interpreted to mean that the trial court's error must have affected the outcome of the trial. State v. Barnes,94 Ohio St.3d 21, 2002-Ohio-68, 759 N.E.2d 1240.
 {¶ 25} The following interaction between the prosecution and Detective Seeberg is the testimony McMillin asserts was improper.
Q: Did you give the defendant a chance to make a statement in thiscase?
 A: Yes. Mr. McMillin was approached in Municipal Court, the hall. Adate was set up for an interview with him in relation to this case.Before that date arrived he was interviewed. He called and stated thatunder advisement of his counsel, Miss Music, that he did not wish to makeany statement to me.
June 2, 2003, Tr. 58-59.
 {¶ 26} McMillin refers to "the prosecutor's improper comments on the refusal of the Defendant to speak to the detective" and to "the prosecutor's misconduct" in his argument that the questioning of Detective Seeberg by the State violated McMillin's Fifth Amendment protection against self-incrimination. Appellant's Brief, p. 18. However, a review of the portion of the trial transcript of Detective Seeberg's testimony, referenced earlier, clearly shows that the prosecutor did not ask of Detective Seeberg, "what the Defendant said when a request to interview him was made," as proposed in McMillin's brief. Appellant's Brief, p. 17. To be accurate, the State asked of Detective Seeberg, "Did you give the defendant a chance to make a statement in this case?" June 2, 2003, Tr. 58. While Detective Seeberg's answer reflected more than just a "yes" or "no" response, the answer was not explicitly sought by the State in the question asked of Detective Seeberg. McMillin has not assigned prosecutorial misconduct as error, and therefore we do not address his gratuitous accusations of misconduct in his brief.
 {¶ 27} The law clearly states that a prosecutor may not comment upon the failure of a defendant to testify at trial. Griffin v.California (1965), 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106. In determining whether a defendant's Fifth Amendment rights were violated, we must examine "whether the language used was manifestly intended or was of such character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify." Webb,70 Ohio St.3d at 328, quoting Knowles v. United States (C.A. 10, 1955),224 F.2d 168, 170. Even if it is determined that the comments by the State regarding the defendant's failure to testify were improper, this court must affirm the conviction if it is concluded that the comments were "harmless beyond any reasonable doubt." State v. Zimmerman (1985),18 Ohio St.3d 43, 45, 479 N.E.2d 862. Error is considered harmless beyond a reasonable doubt if the court can conclude that the remaining evidence, standing alone, can constitute overwhelming proof of the defendant's guilt. State v. Moreland (1990), 50 Ohio St.3d 58, 65,552 N.E.2d 894.
 {¶ 28} We have some concerns with the prosecution asking of witnesses whether the defendant was given an opportunity to give a statement. It is a fine line that the prosecution walks when entering into such discourse with law enforcement officers who are witnesses at the defendant's trial. The question seems to invite an improper answer of the witness. There are only two possible answers to the question, "Did you give the defendant an opportunity to make a statement?" Those two answers are simply "yes" and "no". If the prosecution expected the answer of the witness to be "no", the question most likely would not be asked. On the other hand, if the witness answers "yes", the only inference to be drawn from that response is impermissible unless the statement is introduced. When the defendant chooses not to give a statement to law enforcement and not to testify at trial, the jury may draw negative inferences from the fact that the defendant has remained silent after being given an opportunity to tell his side of the story.
 {¶ 29} Despite the distinctions made by McMillin between pre-arrest and post-arrest silence in the case law,[1] "evidence [that] appears to be offered solely to imply that the defendant is guilty because he did not assert his innocence or make statements to the police" is particularly disturbing. State v. Maggard (June 4, 1999), 2d Dist. No. 17198, unreported, 1999 WL 355869, *12; see Wainwright v. Greenfield
(1986), 474 U.S. 284, 106 S.Ct. 634, 88 L.Ed.2d 623. However, in this case, there is no evidence in the record that the State planned to use the evidence to imply guilt on the part of McMillin because he did not profess his innocence to the police. First, the State asked only one question of Detective Seeberg, to which the Detective gave a nonresponsive answer, and no further questions were asked regarding McMillin's silence. Second, the State did not comment on McMillin's silence in opening or closing statements.
 {¶ 30} We, therefore, conclude that the circumstances in this case do not rise to the level of plain error, although it certainly approaches that level when coupled with the other errors in the case. Therefore, the third assignment of error is overruled.
 {¶ 31} McMillin also raises a claim of ineffective assistance of counsel as his second assignment of error and argues that the jury verdict was against the manifest weight of the evidence in his first assignment of error. Based on the foregoing analysis of McMillin's fourth assignment of error, the first and second assignments of error have been rendered moot and are accordingly overruled.
 {¶ 32} Therefore, based on the foregoing, we find that the errors of the trial court were prejudicial and likely affected the outcome of McMillin's trial. We reverse the conviction of McMillin and remand the case to the Common Pleas Court of Union County.
Judgment reversed.
Shaw and Cupp, JJ., concur.
[1] In State v. Graber, 5th Dist. No. 2002CA00014, 2003-Ohio-137, 2003 WL 124283, at ¶ 76, the court "acknowledge[d] the law within the Ohio district courts of appeal is split on the issue of whether pre-arrest, pre-Miranda silence implicates the assurance from the State such silence will not be used punitively in violation of a defendant's Fifth Amendment right against self incrimination." See, also, State v. Leach, 1st Dist. No. C-020106, 2002-Ohio-6654, 782 N.E.2d 631. Since the United States Supreme Court has not addressed whether the use of pre-arrest, pre-Miranda silence by the State as substantive evidence of guilt violates the Fifth Amendment right against self-incrimination, the States have generally been left to fashion their own evidentiary rules defining the situations in which silence is viewed as more probative than prejudicial. Jenkins v. Anderson (1980), 447 U.S. 231, 239,100 S.Ct. 2124, 65 L.Ed.2d 86. "While numerous federal circuits have considered the issue, they have not agreed." Graber, 2003-Ohio-137, at ¶ 76.