Jeffrey D. SLYMAN, Plaintiff,

v.

CITY OF PIQUA, and Grant Kerber, Defendants.

No. 3:06cv006.

United States District Court,
S.D. Ohio,
Western Division.

March 12, 2007.

Elaine S. Bernstein, Dayton, OH, for Plaintiff.

Robert Jerome Surdyk, Rebekah Stasha Sinnott Neuherz, Surdyk Dowd & Turner Co LPA, Dayton, OH, for Defendants.

DECISION AND ENTRY OVERRULING PLAINTIFF'S MOTION FOR LEAVE TO AMEND (DOC. # 14); DECISION AND ENTRY SUSTAINING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (DOC. # 15); JUDGMENT TO BE ENTERED IN FAVOR OF DEFENDANTS AND AGAINST PLAINTIFF; TERMINATION ENTRY

RICE, District Judge.

On or about November 1, 1999, Plaintiff Jeffrey Slyman ("Plaintiff" or "Slyman") was hired by Defendant City of Piqua ("Piqua") to be its Assistant Law Director.[1] That relationship lasted until late August, 2005. On August 18, 2005, Defendant Grant Kerber ("Kerber"), Piqua's Law Director and Plaintiff's supervisor, spoke by telephone with Slyman, indicating that he (Kerber) wanted to replace Plaintiff as Assistant Law Director with another individual.[2] During that telephone call, Kerber solicited Slyman's resignation and indicated that he could keep his job until Labor Day, if he resigned.[3] Although Plaintiff initially indicated that he would resign his position, he wrote Kerber on August 22, 2005, stating that he had been informed over the weekend that he was a classified employee of Piqua and requesting an extension of one week in which to submit his resignation so that he could consult with counsel. On August 25, 2005, Kerber wrote to Slyman, informing him that he would be discharged effective at the conclusion of court the following day, August 26, 2005.[4]

After being discharged, Slyman initiated this litigation, alleging that his discharge deprived him of a property interest in continued employment without due process of law, in violation of the Fourteenth Amendment. In his Complaint (Doc. # 1), Slyman has set forth two identical procedural due process claims under 42 U.S.C. § 1983, one against each of the Defendants, predicated upon that theory.

■ This case is now before the Court on the Defendants' Motion for Summary Judgment (Doc. # 15), in which they argue that they are entitled to summary judgment on Plaintiff's procedural due process claims, because he did not have a property interest in continued employment.[5] For reasons which follow, this Court agrees.

---

1. Since this litigation comes before the Court on the Defendants' Motion for Summary Judgment (Doc. # 15), this Court sets forth the facts and circumstances giving rise to this litigation in the manner most favorable to Plaintiff.

2. In particular, Kerber wanted to replace Slyman with John Herndon ("Herndon"), who was employed as an associate in the law firm of which Kerber is a partner.

3. Kerber reaffirmed that request during his meeting with Slyman the following day.

4. Slyman was ultimately replaced by Herndon.

5. Parenthetically, Defendants have supported their request for summary judgment with, *inter alia,* Kerber's affidavit. Therein, Kerber essentially testifies concerning the meaning of the Piqua Charter. However, "[i]t is the function of the trial judge to determine the law of the case," rather than delegating that duty to a witness to provide testimony about controlling legal principles. *United States v. Zipkin,* 729 F.2d 384, 387 (6th Cir.1984). Therefore, this Court has disregarded the portions of Kerber's affidavit in which he testified about his interpretation of the Piqua Charter.

The Court begins its analysis by setting forth the procedural standards it must apply whenever it rules on a motion for summary judgment.

Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Of course, the moving party:

> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*Id.* at 323, 106 S.Ct. 2548. *See also Boretti v. Wiscomb,* 930 F.2d 1150, 1156 (6th Cir. 1991) (The moving party has the "burden of showing that the pleadings, depositions, answers to interrogatories, admissions and affidavits in the record, construed favorably to the nonmoving party, do not raise a genuine issue of material fact for trial.") (quoting *Gutierrez v. Lynch,* 826 F.2d 1534, 1536 (6th Cir.1987)). The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (quoting Fed.R.Civ.P. 56(e)). Thus, "[o]nce the moving party has met its initial burden, the nonmoving party must present evidence that creates a genuine issue of material fact making it necessary to resolve the difference at trial." *Talley v. Bravo Pitino Restaurant, Ltd.,* 61 F.3d 1241, 1245 (6th Cir.1995). Read together, *Liberty Lobby* and *Celotex* stand for the

proposition that a party may move for summary judgment by demonstrating that the opposing party will not be able to produce sufficient evidence at trial to withstand a directed verdict motion (now known as a motion for judgment as a matter of law. Fed.R.Civ.P. 50). *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1478 (6th Cir.1989).

Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). *See also Michigan Protection and Advocacy Service, Inc. v. Babin,* 18 F.3d 337, 341 (6th Cir.1994) ("The plaintiff must present more than a scintilla of evidence in support of his position; the evidence must be such that a jury could reasonably find for the plaintiff."). Rather, Rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. *Celotex Corp.,* 477 U.S. at 324, 106 S.Ct. 2548. Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Summary judgment shall be denied "[i]f there are ... 'genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.'" *Hancock v. Dodson,* 958 F.2d 1367, 1374 (6th Cir.1992) (citation omitted). Of course, in determining whether a genuine issue of material fact exists, a court must assume as true the

evidence of the nonmoving party and draw all *reasonable* inferences in the favor of that party. *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505 (emphasis added). If the parties present conflicting evidence, a court may not decide which evidence to believe, by determining which parties' affiants are more credible; rather, credibility determinations must be left to the factfinder. 10A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure,* § 2726. In ruling on a motion for summary judgment (in other words, in determining whether there is a genuine issue of material fact), "[a] district court is not ... obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller,* 889 F.2d 108, 111 (6th Cir. 1989), *cert. denied,* 494 U.S. 1091, 110 S.Ct. 1839, 108 L.Ed.2d 967 (1990). *See also L.S. Heath & Son, Inc. v. AT & T Information Systems, Inc.,* 9 F.3d 561 (7th Cir.1993); *Skotak v. Tenneco Resins, Inc.,* 953 F.2d 909, 915 n. 7 (5th Cir.), *cert. denied,* 506 U.S. 832, 113 S.Ct. 98, 121 L.Ed.2d 59 (1992) ("Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment...."). Thus, a court is entitled to rely, in determining whether a genuine issue of material fact exists on a particular issue, only upon those portions of the verified pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits submitted, specifically called to its attention by the parties.

As indicated, the Defendants argue that they are entitled to summary judgment on the Plaintiff's procedural due process claims, because he did not have a property interest in continued employment with Piqua.[6] As a means of analysis, the Court will initially review the legal principles which govern procedural due process claims.

The Sixth Circuit recently reiterated that "[t]o establish a procedural due process claim, a plaintiff must show that she had a property interest of which she was deprived without due process of law." *Hudson v. Hudson,* 475 F.3d 741, 745 (6th Cir.2007) (citing Fourteenth Amendment). In *McCarthy v. Middle Tennessee Electric Corp.,* 466 F.3d 399 (6th Cir.2006), the Sixth Circuit restated the familiar principles which must be applied to determine whether someone has a property interest:

"To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Hamby v. Neel,* 368 F.3d 549, 557 (6th Cir.2004) (quoting *Bd. of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972)). We have explained that such interests "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits."

**6.** Kerber phrases his argument in terms of being entitled to summary judgment on the basis of qualified immunity. It is axiomatic that a court "evaluating a claim of qualified immunity must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all." *Wilson v.*

*Layne,* 526 U.S. 603, 608, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999) (internal quotation marks and citation omitted). Therefore, this Court proceeds initially to the question of whether Plaintiff had a property interest in continued employment.

*Id.* (quoting *Roth,* 408 U.S. at 576, 92 S.Ct. 2701).

*Id.* at 412. Of course, a property interest in continued employment may be created by municipal charter or ordinance, as Plaintiff claims. *Silberstein v. City of Dayton,* 440 F.3d 306, 312 (6th Cir.2006) (municipal charter); *Bishop v. Wood,* 426 U.S. 341, 344, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976) (municipal ordinance). Examining the pertinent sources of law, the Piqua Charter and Code of Ordinances, causes this Court to conclude that Plaintiff does *not* have a property interest in continued employment.[7]

The positions of Law Director and Assistant Law Director were created by Section 41 of the Piqua Charter, which provides in pertinent part:

> The law director ... shall be the chief legal advisor of and attorney for the city and all departments and offices thereof in matters relating to their official powers and duties. It shall be his duty, either personally or by such assistants as he may designate, with the approval of the city manager, to perform all services incident to the department of law; to attend all meetings of the commission; to give advice in writing, when so requested, by the commission, commissioners, the city manager, the director of any department or head of any office not connected with a department; to prosecute or [to] defend, as the case may be, all cases or suits in which the city may be a party; to prosecute for all offenses against the ordinances of the city and for such offenses against the state as may be required of him by law; to prepare all contracts, bonds and other instruments in writing in which the city is concerned, and to endorse on each his approval as to form and correctness thereof; and to perform such other duties of a legal nature as the commission by ordinance may require.

The position of Assistant Law Director is specifically listed on Schedule A–1 of the Piqua Code of Ordinances.[8] The first sentence of § 33.02 of that Code of Ordinances provides, *inter alia,* that said section is applicable to Schedule A–1 employees. Section 33.02(E) provides:

> *(E) At-will employment*
>
> (1) Completion of a probationary period or conferral of regular employee status shall not change an employee's sta-

---

**7.** Plaintiff has not cited, nor has research found, a provision in the Ohio Revised Code demonstrating that Plaintiff was a classified employee and, therefore, had a property interest in continued employment under state law.

**8.** In addition, § 33.17(B) of the Piqua Code of Ordinances provides that all part-time employees are included within Schedule A–1. It is undisputed that Plaintiff was employed part-time by Piqua. Parenthetically, in his Memorandum in Opposition to Defendants' Motion for Summary Judgment (Doc. # 20), Plaintiff contends that he was employed as a Municipal Prosecutor, rather than as an Assistant Law Director, although he fails to explain the pertinence of that premise. This Court cannot agree that Plaintiff was anything but an Assistant Law Director, even if his duties involved prosecuting matters on behalf of the municipality. In his application for employment with Piqua, Slyman stated that he was applying for the position of Assistant Law Director, and he subsequently signed a job description which indicated that the title of his position was Assistant Law Director. Moreover, if Plaintiff has raised that point in order to argue that he was not a Schedule A–1 employee, the Court would reject his point even if he had been employed as the Municipal Prosecutor, since it is unquestioned that Slyman was a part-time employee and such are Schedule A–1 employees. It bears noting that no provision of the Piqua Charter or Code of Ordinances refers to the position of Municipal Prosecutor, while Section 41 of the Charter puts the obligation of prosecuting offenses on the Law Director and his assistants (i.e., Assistant Law Directors).

tus as an employee-at-will, or in any way restrict the city's right to terminate such employee or change the terms and conditions of employment. Nothing contained in this or other city policies or other material provided to employees in connection with their employment shall require the city to have just cause to terminate that employee, or otherwise restrict the city's right to terminate an employee at any tune (sic) for any lawful reason.

(2) An employee's at-will status shall not be modified by any statements made by any person or by any writing available to employees or applicants in connection with their employment. No document, whether singly or combined, shall create an express or implied contract concerning any terms or conditions of employment.

■ Although under the Piqua Code of Ordinances Plaintiff's employment relationship has been described as at-will, he was unquestionably an unclassified employee. Section 3.02(A)(1) of the Piqua Personnel and Policy Manual provides that all positions in the civil service are either classified or unclassified and, further, that "[o]nly the full-time sworn police officers and firefighter/paramedic employees of the Safety Forces (police and fire) are classified employees." Moreover, Ohio courts have indicated that an unclassified employee is an at-will employee. For instance, in *Crantson v. Kent State University*, 2004 WL 1191957 (Ohio Ct.Cl.2004), the court noted that "[a]n unclassified employee ... is an 'at-will' employee who is subject to discharge for any reason." *Id.* at *2. *See also, Crandall v. City of Fairborn*, 2003

WL 21658469 (Ohio App.2003) (holding that an unclassified employee is employed at-will); *Dunnigan v. City of Lorain*, 2002 WL 31313216 (Ohio App.2002) (same). Under Ohio law, a public employee, employed in an unclassified position, does not have a property interest in his continued employment. *Crandall*, 2003 WL 21658469 at *4; *Snyder v. City of Fairborn*, 2002 WL 1483282 (Ohio App.2002) 1483282 (unclassified municipal employee may be discharged without a hearing because he has no property interest in continuing employment). *Lee v. Cuyahoga Cty. Court of Common Pleas*, 76 Ohio App.3d 620, 622–623, 602 N.E.2d 761, 762–63 (1991) (court employees who serve at the pleasure of the court are unclassified employees who have no vested property interest in continued employment). *See also, Christophel v. Kukulinsky*, 61 F.3d 479, 482 (6th Cir.1995) (noting that under Ohio law an unclassified civil servant has "no property right to continued employment"). Accordingly, this Court is compelled to conclude that, since Plaintiff was an unclassified, at-will employee, he did not have a property interest in continued employment.[9]

Without challenging the foregoing, Plaintiff argues that Section 32 of the Piqua Charter demonstrates that he does, indeed, have a property interest in continued employment as the Assistant Law Director. Section 32, which is entitled "Removal of Officers and Employees," provides in pertinent part:

Any officer or employee of the city, including assistants and employees in the office of the city clerk, may be laid off, suspended or removed from office or employment by the officer by whom ap-

---

**9.** According to Plaintiff, he was told by the Director of Personnel for Piqua that he was in the classified service. Accepting that he was so told, the Court rejects the premise that such a statement means that he was a classified employee and that, therefore, he had a property interest in continued employment, pursuant to the authority of section 33.02(E)(2) of the Piqua Code of Ordinances, which provides that an employee's "at-will status shall not be modified by any statements made by any person."

pointed. Verbal or written notice of layoff, suspension or removal given directly to an officer or employee, or written notice left at or mailed to his usual place of residence shall be sufficient to put any such layoff, suspension or removal into effect unless the person so notified shall, within five working days after such notice, demand a written statement of the reasons therefor and the right to be heard publicly before the city manager and the officer by whom such notice was given. Upon such demand, the officer making the layoff, suspension or removal shall supply the person notified thereof with a written statement of the reasons therefor[,] and the city manager shall fix a time and place for the public hearing. Following the public hearing[,] the city manager shall, by a decision in writing, make such disposition of the case as, in his opinion, the good of the service may require, and such decision shall be final.

Plaintiff's reliance on Section 32 is undercut by *McClain v. NorthWest Community Corrections Center Judicial Corrections Bd.*, 440 F.3d 320 (6th Cir.2006). Therein, the plaintiff had formerly been employed by the NorthWest Community Corrections Center, a community-based correctional facility serving five counties in northwestern Ohio. After having been discharged, plaintiff brought suit, setting forth, *inter alia*, a procedural due process claim. The District Court granted summary judgment to the defendants on that claim, and plaintiff appealed, arguing, *inter alia*, that "her right to due process under Ohio law creates a property interest that is protected by the Federal Constitution."[10] *Id.* at 324. In particular, plaintiff relied upon Regulation P of the Ohio Department of Corrections, which provided that employees such as plaintiff were unclassified, and

directed community-based correctional facilities to develop personnel policies and practices. *Id.* at 328. Those policies and practices were required to provide due process for employees. *Id.* Since Regulation P required that she be afforded due process, plaintiff argued that she had a property interest which supported her procedural due process claim under the Fourteenth Amendment. The Sixth Circuit rejected that argument, writing:

No constitutional entitlement to procedural due process can logically arise when the decision-maker's power is wholly discretionary. For instance in *Bishop v. Wood*, 426 U.S. 341, 345–47, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976), the Supreme Court held that a city police officer, who held his position at the will and pleasure of the city, had no property interest in his job even though he was entitled to certain procedural rights provided by the city.

*Id.* at 330.

■ Similarly, herein, the Piqua Code of Ordinances gives the Law Director discretionary authority to discharge Assistant Law Directors. Although Section 32 of the Piqua Charter provides an express type of due process (a public hearing before the City Manager), while Regulation P merely required that policies and practices afford due process to employees, that is a distinction without a difference. The central point of *McClain* is that affording state procedural rights to an unclassified employee does not give him a federally protected property interest in continued employment. Contrary to the Sixth Circuit's holding therein, Plaintiff contends that the procedural rights provided by Section 32 of the Piqua Charter give him a property interest in continued employment. This Court cannot agree. Moreover, in *Bishop v. Wood*, 426 U.S. 341, 96

---

**10.** Therein, the Sixth Circuit also noted that plaintiff did not have a property interest in continued employment because she was an unclassified employee. 440 F.3d at 330.

S.Ct. 2074, 48 L.Ed.2d 684 (1976), the Supreme Court held that the Chief of Police for Marion, North Carolina, who was employed under a municipal ordinance which had been interpreted by the District Court as merely providing certain procedural protections in the event of discharge, (rather than guaranteeing continued employment),[11] did not have a property interest in his continued employment, notwithstanding the procedural protections.

In addition, Plaintiff contends that he was denied due process, because he was not notified of his right to a hearing under Section 32 of the Charter. However, based upon the foregoing, this Court has concluded that Plaintiff did not have a federally property interest in continued employment. Without such a federally protected property interest, Plaintiff had no right to due process, regardless of whether he was or was not told of the appeal rights conferred upon him by that provision of the Piqua Charter.[12]

Based upon the foregoing, the Court concludes, as a matter of law, that Plaintiff did not have a federally protected property interest in continued employment. Accordingly, it sustains Defendants' Motion for Summary Judgment (Doc. # 15). Judgment is to be entered in favor of Defendants and against Plaintiff.[13]

The captioned cause is hereby ordered terminated upon the docket records of the United States District Court for the Southern District of Ohio, Western Division, at Dayton.

---

**11.** The Supreme Court accepted that interpretation, rather than engaging in its own, independent assessment of the ordinance.

**12.** Parenthetically, Plaintiff did not request a hearing, as provided for by Section 32 of the Charter. That failure is of no present import, given that he did not have a federally protected property interest in continued employment, a conclusion unaffected by any request for or result from such a hearing.

Plaintiff also asserts that Piqua did not properly advertise for his replacement. Accepting that the municipality failed in that regard, such is irrelevant, as it does not alter the fact that Plaintiff did not have a property interest in continued employment and, therefore, does not have a valid procedural due process claim under the Fourteenth Amendment.

**13.** Plaintiff's Motion for Leave to Amend (Doc. # 14) is also pending. With that motion, Plaintiff requests leave of court to file an amended complaint, which would add a Defendant and three additional claims. Plaintiff seeks to add the law firm of Shipman, Dixon & Livingston Co., L.P.A. ("Shipman"), as a Defendant. Kerber is alleged to be a partner of that firm, and Herndon, the person who replaced Plaintiff as Assistant Law Director, is alleged to be one of its associates. The two claims set forth in Plaintiff's initial Complaint (Doc. # 1) would be set forth, unaltered, in Plaintiff's amended pleading. One of the newly added claims would be predicated upon the allegation that Kerber and Shipman conspired to deprive Plaintiff of a property interest in continued employment with Piqua (his prospective Third Claim for Relief), without due process of law, while the other two claims would be state law, tortious interference claims against Shipman and Kerber (Plaintiff's prospective Fourth and Fifth Claims for Relief). The Court overrules Plaintiff's Motion for Leave to Amend, given that granting such leave would be futile. *See Foman v. Davis*, 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962) (holding that futility is one of the grounds for denying leave to amend). Granting leave to amend would be futile herein, because the Court, contemporaneously with granting such leave, would require Plaintiff to show cause why his Third Claim for Relief should not be dismissed with prejudice, because he does not have a property interest in continued employment, and why the Court should not decline to exercise supplemental jurisdiction over his Fourth and Fifth Claims for Relief and, thus, dismiss them without prejudice.