[Cite as *Marszal v. Catholic Cemeteries Assn. of the Diocese of Cleveland*, 2025-Ohio-2398.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## GEAUGA COUNTY

JESSICA MARSZAL,

        Plaintiff-Appellant,

  - vs -

THE CATHOLIC CEMETERIES
ASSOCIATION OF THE DIOCESE
OF CLEVELAND, et al.,

        Defendant-Appellee.

**CASE NO. 2024-G-0047**

Civil Appeal from the
Court of Common Pleas

Trial Court No. 2023 M 000677

---

## OPINION AND JUDGMENT ENTRY

Decided: July 7, 2025
Judgment: Affirmed

---

*Thomas C. Loepp*, 3580 Darrow Road, Stow, OH 44224 (For Plaintiff-Appellant).

*Brian D. Sullivan*, *James O'Connor*, and *Julie Grace Vanvliet*, Reminger Co., LPA, 200 Public Square, Suite 1200, Cleveland, OH 44115 (For Defendant-Appellee).

MATT LYNCH, J.

{¶1}   Appellant, Jessica Marszal, appeals the judgment of the Geauga County Court of Common Pleas that awarded summary judgment in favor of appellee, The Catholic Cemeteries Association of the Diocese of Cleveland ("the Diocese"). For the following reasons, we affirm.

{¶2}   In November 2023, Jessica Marszal ("Jessica") filed a complaint alleging claims of breach of contract, intentional infliction of emotional distress, and disinterment against the Diocese and her cousin, Annie Marszal ("Annie"), daughter of her father's brother, Edward Marszal ("Edward"). Jessica sought an order of disinterment for a portion

of Edward's cremains that were buried in the grave of her father, Stanley Marszal ("Stanley"), in addition to money damages.

{¶3}    In the complaint, Jessica alleged that her mother, Jane Marszal ("Jane"), purchased from the Diocese two plots for herself and Stanley at All Soul's Cemetery following Stanley's death on December 3, 2006.  Jane died 14 years later, on December 6, 2020.  Stanley had a daughter from a previous marriage, Jessica's half-sister, Anne Margaret Duffy, now Anne Margaret Pasquale ("Ms. Pasquale").

{¶4}    After Edward died on March 21, 2021, Annie purchased from the Diocese a "certain interment" for him at All Soul's Cemetery.  Jessica alleged the Diocese wrongfully allowed some of Edward's cremains to be interred in the "crypt of Stanley and Jane" without her permission, breaching its contract with Jane and in contravention of its rules and regulations.  Jessica further alleged Annie knew at all times that she lacked the legal ability to inter Edward's cremains with Stanley and Jane, and that Annie did not seek permission from Jessica to do so.  Jessica asked the court to order Annie to disinter Edward's cremains from Stanley and Jane's "crypt."  In addition, Jessica alleged the intentional and/or negligent actions of the Diocese and Annie caused her pain and suffering for which she is entitled to punitive damages in excess of $150,000.

{¶5}    Jessica attached to the complaint an email chain between her counsel and the Diocese, seeking documentation from the Diocese on the purchase of the plots for Stanley and Jane; a May 25, 2021 Diocese Field Report for Edward, with Annie named as the purchaser; a May 17, 2021 at-need right of interment agreement for Edward purchased by Annie and signed by Ms. Pasquale, with "Pasquale" crossed out; a copy of the Diocese's Rules and Regulations; and an email chain between a sales representative

Case No. 2024-G-0047

of All Soul's Cemetery and Annie, in which the sales representative informed Annie that she "would need to get permission from [her] cousins in order for the interment to take place. . . ."

{¶6} The following definitions in the Diocese's Rules and Regulations are pertinent:

> "**Certificate of Right of Interment**" is the document which is provided to the purchaser of the right of burial in a grave, entombment or inurnment in a mausoleum or other structure used for interments, upon payment in full of the purchase amount set forth in the agreement for purchase contract. It shall denote any applicable interment rights or restrictions. The Certificate of Right of Interment is the owner's proof to the use of the specified space for burial, entombment or inurnment all of which shall hereinafter be referred to as "interment rights".

> "**Option Right**" is defined as the option to modify a single place of interment to accommodate additional interments through the purchase of additional rights of interment in accordance with the Rules and Regulations of the [Diocese]. See Section VI for additional information.

> "**Owner**" is defined as the person in whose name the Certificate of Right of Interment is issued as designated by the Purchaser. The Owner and the Purchaser may be the same person.

> "**Place of Interment**" is defined as the grave, crypt or niche designated for the interment of deceased persons.

> "**Purchaser**" is defined as the person who entered into an agreement with the [Diocese] for the purchase of a Right of Interment, and any services or products provided by the [Diocese], in a cemetery owned by the [Diocese].

> "**Right of Interment**" is defined as the right for one individual to be buried, entombed or inurned in a Place of Interment pursuant to a duly executed Agreement with the [Diocese] and in compliance with [the Diocese's] policies and procedures and these Rules and Regulations. The Certificate of Right of Interment is the official document issued by the [Diocese] establishing ownership of the Right of Interment and identifying its location.

{¶7} Further, Part VI, Rights and Obligations of an Owner of a Right of Interment, Section D, "Option Rights," provides in relevant part:

Case No. 2024-G-0047

A Right of Interment in a Place of Interment is purchased for the interment of one deceased person. If it is determined by the [Diocese], in its sole discretion, that space exists in a Place of Interment for the interment of additional human remains, an additional Right of Interment may be added through the purchase of an Option Right. Use of option rights to increase the number of interments in one place of interment must be approved solely by the [Diocese] and is limited by the available space in a single place of interment and the total number of interments permitted by these Rules and Regulations. Options may be purchased for either full body interments or cremation interments. Option Rights are established as follows[:]

. . .

2. Option Rights for Interment of Cremated Remains in a grave: [This section then outlines how the cremains may be interred when there are other cremains or full body interments in a grave, crypt, or niche].

{¶8}    Both Annie and the Diocese answered the complaint. In relevant part, the Diocese attached to its answer a December 4, 2006 at-need right of interment agreement for two plots following Stanley's death in 2006. It was purchased and signed by Ms. Pasquale. The agreement named Jane as the "certificate of ownership in name of" and listed her "relationship to owner" as spouse. In relevant part, under the "additional terms and conditions," the agreement provided:

USE: The Right of Interment being purchased under this Agreement is being purchased solely for use by the individual designated by Purchaser as the Owner on the Certificate of Right of Interment, the immediate family of the Owner or other individual as designated by the Owner. Purchaser acknowledges that this purchase is not for speculation with a view to resell or redistribute the Right of Interment for profit. . . .

SUCCESSORS and ASSIGNS: This Agreement shall be binding between the [Diocese] and the Purchaser and Purchaser's heirs, successors, assigns and administrators.

{¶9}    The additional terms and conditions in Edward's at-need right of interment agreement between the Diocese and Annie differs:

USE: The Right of Interment being purchased under this Agreement is being purchased solely for use by the individual designated as the Owner

Case No. 2024-G-0047

on the Certificate of Right of Interment, his or her spouse if applicable, the descendants of the Owner or any other individual designated by the Owner. Purchaser acknowledges that this purchase is not for speculation with a view to resell or distribute the Right of Interment for profit.

SUCCESSORS AND ASSIGNS: This Agreement shall be binding between the [Diocese] and Purchaser and the [Diocese] and the Owner and their respective heirs, successors, assigns and administrators.

{¶10} The Diocese also attached to its answer a May 17, 2021 notarized agreement between Ms. Pasquale and the Diocese wherein Ms. Pasquale agreed to "assume full responsibility for the burial of Edward R. Marszal, in All Soul's Cemetery, Chardon, Ohio Lot 2935 Section 29, Graves #2." Ms. Pasquale further agreed that she "hereby release[s] the management of Catholic Cemeteries Association from all responsibility incidental to the above burial."

{¶11} Annie filed a motion for summary judgment, contending Jessica failed to provide any evidence to support the allegations against her in the complaint. Attached was Annie's affidavit, in which she averred that she was not involved in authorizing the decision to inter some of Edward's cremains in Stanley's grave and that the decision was made by Ms. Pasquale.

{¶12} Jessica responded in opposition, contending there were genuine issues of material fact as to Annie's responsibility in the matter. Jessica separately filed an affidavit attesting, in part, that the statements contained in Annie's affidavit were fictional; that "[a]ny reasonable person knows that someone does not just hand over their father's ashes"; and that "she (Jessica) is the sole executor of Jane's estate."

{¶13} Annie filed a reply in support of her motion for summary judgment, contending Jessica's affidavit was not based on personal knowledge and made

Case No. 2024-G-0047

conclusory allegations regarding Annie's "authority" to inter some of Edward's cremains in Stanley's grave.

{¶14}  The trial court awarded Annie summary judgment, finding that Jessica failed to demonstrate any genuine issues of material fact.  The court found that Jessica's affidavit lacked personal knowledge because it contained speculation rather than actual evidence and therefore did not dispute Annie's sworn testimony.  This judgment is not before us on appeal.

{¶15} The Diocese filed a motion for summary judgment contending that (1) Jessica does not have standing to pursue a breach of contract claim because she is not a party to the contract; (2) the Diocese reasonably relied upon Ms. Pasquale's affidavit authorizing the Diocese to inter some of Edward's cremains in Stanley's grave; (3) Jessica is not entitled to have Edward's cremains disinterred; and (4) Jessica's claim for intentional infliction of emotional distress fails as a matter of law.  The Diocese attached to its motion, in relevant part, deposition testimony of Jessica and Ms. Pasquale, and a December 6, 2006 interment request form made by Ms. Pasquale for Stanley in which she identified herself as the "owner."

{¶16}  In her deposition, Jessica testified that both of her parents had children from prior marriages.  Ms. Pasquale is Stanley's daughter and Jessica's half-sister.  In December 2006, Stanley died while on vacation with Jane in Florida.  Ms. Pasquale arranged for the funeral and secured two plots for Stanley and Jane at All Soul's Cemetery from the Diocese.  Jane started paying for the two plots in March 2007.  Jane never had any plans for Edward to be buried with Stanley.  Jessica has been estranged for years

Case No. 2024-G-0047

from both Ms. Pasquale and Edward. Jessica did not discover that some of Edward's cremains were interred with her father until August 2023.

{¶17} Ms. Pasquale testified at her deposition that she was 14 years old when her father and Jane had Jessica. Ms. Pasquale and Edward made the funeral arrangements for Stanley. She purchased the plots, and Edward paid for them. Ms. Pasquale confirmed she had no relationship with Jessica. After Edward's death, her cousin, Annie, approached her about interring some of Edward's cremains with Stanley. After speaking with Edward's wife and son, Ms. Pasquale signed a notarized affidavit of agreement with the Diocese, assuming liability for the decision. She confirmed she is listed as the owner on Stanley's interment request form. She agreed that she is the named purchaser, and that Jane is listed as the certificate of owner on Stanley's at-need right of interment agreement. She also confirmed that she signed Edward's at-need right of interment agreement for Annie, who is listed as the purchaser of the agreement.

{¶18} Jessica filed a reply in opposition to the Diocese's motion for summary judgment but submitted no affidavits or other evidence. First, she contended that the Diocese confused Annie and Ms. Pasquale. Jessica stated, "The DIOCESE's motion is based entirely on its claim that it had permission from one of the daughters of Stanley. The DIOCESE claims that it received an affidavit from Stanley's daughter. It did not."

{¶19} Jessica further pointed to two clauses in the Diocese's Rules and Regulations:

> Written Application for Interment: ***All interment requests must be in writing and signed by an authorized representative***. An interment request must be made by the Owner of the Right of Interment, or an authorized person appointed by Owner or the successor to the Owner. [p. 19, Section L]

Case No. 2024-G-0047

Designation by Owner of Use of the Right of Interment: Upon purchasing a Right of Interment and property transfer of such right to the Owner by the [Diocese], the Owner has the right to designate the person to be interred in the place of interment subject to these Rules and Regulations and the laws of the Roman Catholic Church. Prior to such designation, ownership of the Right of Interment must be affirmed through the receipt of a duly signed Certificate of Right of Interment by the [Diocese]. The Owner of a right of interment may designate who is to be interred in the place of interment as follows [this section then specifies that (1) the owner may authorize the interment of a deceased person in his/her place thus transferring the right of interment, or (2) through testamentary documents specify who would own (and use) the right of interment, or (3) through the use of a reservation by filing an affidavit who may use the right of interment].

(Bold in original.)

{¶20} Lastly, Jessica contended the Diocese could not rely on Ms. Pasquale's "responsible party for burial" affidavit because it could not show such reliance was in good faith. The Diocese had notified Annie that she needed the consent of her "cousins," but only Ms. Pasquale gave her consent.

{¶21} The trial court awarded summary judgment to the Diocese. The court found Jessica did not present any evidence creating an issue of material fact as to whether she had standing to pursue a breach of contract claim, and the undisputed evidence demonstrated she is not a party or a third-party beneficiary to the contract. The court further found there was no issue of material fact as to whether the Diocese reasonably relied on Ms. Pasquale's affidavit in authorizing the interment of Edward's cremains with Stanley, and the Diocese reasonably relied on the affidavit as a matter of law. Lastly, the court found there was no issue of material fact as to whether the Diocese's conduct was so outrageous it could justify a claim for intentional infliction of emotional distress, and the Diocese was entitled to judgment on this claim as a matter of law. Jessica did not

Case No. 2024-G-0047

demonstrate with "any appropriate sworn testimony" that she suffered from emotional distress.

**{¶22}** Jessica appealed and raises one assignment of error for our review:

**{¶23}** "The trial court erred in its grant of summary judgment."

**{¶24}** In her sole assignment of error, Jessica contends the trial court erred in awarding summary judgment to the Diocese. She reiterates the arguments she made in her reply in opposition to the Diocese's motion for summary judgment, contending the Diocese was confused over which "Annie" (Ms. Pasquale or Annie) it was dealing with and the Diocese did not have permission from one of Stanley's heirs; Jane purchased the plots only for herself and Stanley; the Diocese did not follow its Rules and Regulations; and the Diocese could not rely on Ms. Pasquale's affidavit in good faith.

**{¶25}** An appellate court conducts a de novo review of a trial court's decision to grant summary judgment, *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996), using the same standards as the trial court. Before the trial court may grant summary judgment, it must determine that (1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing the evidence most strongly in favor of the party against whom the motion for summary judgment is made, the conclusion is adverse to that party. Civ.R. 56(C); *Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327 (1977). Whether a fact is "material" depends on the substantive law of the claim being litigated. *Turner v. Turner*, 67 Ohio St.3d 337, 340 (1993).

Case No. 2024-G-0047

**{¶26}** To succeed on her breach of contract claim, Jessica was required to provide evidence of (1) the existence of a contract, (2) performance by the plaintiff, (3) breach by the defendant, and (4) damages. *Huffman v. Kazak Bros., Inc.*, 2002 WL 549858, *4 (11th Dist. Apr. 12, 2002).

**{¶27}** On summary judgment, the Diocese submitted, in relevant part, the at-need right of interment agreement for Stanley and Jane, which was purchased by Ms. Pasquale, and the notarized agreement with Ms. Pasquale, one of Stanley's heirs, authorizing and assuming liability for the interment of a portion of Edward's cremains in Stanley's grave. There is no evidence that the Diocese confused Annie for Ms. Pasquale, that the Diocese violated its Rules and Regulations, and/or that the Diocese could not rely in good faith on Ms. Pasquale's affidavit.

**{¶28}** Jessica failed to support her arguments with any evidence in opposition to the Diocese's motion. Thus, she failed to carry her reciprocal burden on summary judgment to provide evidentiary quality material demonstrating a genuine issue of material fact. *See Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996). Pursuant to Civ.R. 56(E), "[w]hen a motion for summary judgment is made *and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the party's pleadings*, but the party's response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the party does not so respond, summary judgment, if appropriate, shall be entered against the party." (Emphasis added.)

**{¶29}** Jessica also failed to submit any evidence to support her claim of intentional or negligent infliction of emotional distress by the Diocese. To establish a claim of

Case No. 2024-G-0047

intentional infliction of emotional distress, Jessica was required to show (1) the Diocese either intended to cause or knew or should have known that the action would result in serious emotional distress to her; (2) the Diocese's conduct was so extreme and outrageous as to go "'beyond all possible bounds of decency' and was such that it could be considered as 'utterly intolerable in a civilized community'"; (3) the Diocese's actions were the proximate cause of Jessica's psychological injury; and (4) the mental anguish she suffered was serious and of a nature that no reasonable person "'could be expected to endure it.'" *Kovacic v. Eastlake*, 2006-Ohio-7016, ¶ 92 (11th Dist.), quoting *Buckman-Peirson v. Brannon*, 2004-Ohio-6074, ¶ 29 (2d Dist.). Further, the "emotional distress" must be more than a trifling mental disturbance, mere upset, or hurt feelings. *Paugh v. Hanks*, 6 Ohio St.3d 72, 78 (1983). Examples of this type of psychic injury "include traumatically induced neurosis, psychosis, chronic depression, or phobia." *Id.* Similarly, to defeat a motion for summary judgment for negligent infliction of emotional distress, Jessica was required to present evidence creating a genuine issue of material fact that she, in addition to proof on the other elements, "'suffered serious emotional distress' as a result of a cognizance, or fear, of peril." *Winkle v. Zettler Funeral Homes, Inc.*, 2009-Ohio-1724, ¶ 33 (12th Dist.), quoting *Walker v. Firelands Community Hosp.*, 2007-Ohio-871, ¶ 59 (6th Dist.).

{¶30} Lastly, although not argued by the parties, orders of disinterment are under the exclusive purview of the probate court's jurisdiction, R.C. 2101.24(A)(1)(dd). *See In re Adelaide*, 2024-Ohio-5393, ¶ 107 (separate opinion of Deters, J.) (probate courts determine actions relating to disinterment and reinterment of human remains).

Case No. 2024-G-0047

Accordingly, the general division of the common pleas court had no authority to grant such relief.

{¶31} Thus, the trial court properly awarded summary judgment in favor of the Diocese on Jessica's claims. Once the burden of production shifted to Jessica, she could not rest on her pleadings or merely reassert her previous allegations. *Slyman v. Piqua*, 494 F.Supp.2d 732, 734 (S.D. Ohio 2007), quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (applying Fed.R.Civ.P. 56(C)). "It is not sufficient to 'simply show that there is some metaphysical doubt as to the material facts.'" *Id. See also Michigan Protection & Advocacy Serv., Inc. v. Babin*, 18 F.3d 337, 341 (6th Cir. 1994) ("The plaintiff must present more than a scintilla of evidence in support of his position; the evidence must be such that a jury could reasonably find for the plaintiff.").

{¶32} In addition, we note there is no merit to Jessica's arguments that pursuant to R.C. 2108.86, the Diocese could not in good faith rely on Ms. Pasquale's affidavit when Ms. Pasquale is the purchaser of Stanley's interment and his heir, and/or that Jessica is a third-party beneficiary that had certain undefined rights under that interment agreement. Jessica offers no law in support of these arguments. "An appellant 'bears the burden of affirmatively demonstrating error on appeal.'" *Tally v. Patrick*, 2009-Ohio-1831, ¶ 22 (11th Dist.), quoting *Village of S. Russell v. Upchurch*, 2003-Ohio-2099, ¶ 10 (11th Dist.). "'It is not the obligation of an appellate court to search for authority to support an appellant's argument as to an alleged error.'" *Id.*, citing *Kremer v. Cox*, 114 Ohio App.3d 41, 60 (1996). "Furthermore, if an argument exists that can support appellant's assignments of error, 'it is not this court's duty to root it out.'" *Id.*, quoting *Harris v. Nome*, 2002-Ohio-

Case No. 2024-G-0047

6994, ¶ 15 (9th Dist.).'" *Id.* "Accordingly, we may disregard an [argument] that fails to comply with App.R. 16(A)(7)." *Id.*

{¶33} Finding Jessica's assignment of error lacks merit, we affirm the judgment of the Geauga County Court of Common Pleas.

ROBERT J. PATTON, P.J.,

JOHN J. EKLUND, J.,

concur.

Case No. 2024-G-0047

# JUDGMENT ENTRY

For the reasons stated in the opinion of this court, appellant's assignment of error is without merit. It is the judgment and order of this court that the judgment of the Geauga County Court of Common Pleas is affirmed.

Costs to be taxed against appellant.

JUDGE MATT LYNCH

PRESIDING JUDGE ROBERT J. PATTON,
concurs

JUDGE JOHN J. EKLUND,
concurs

**THIS DOCUMENT CONSTITUTES A FINAL JUDGMENT ENTRY**

A certified copy of this opinion and judgment entry shall constitute the mandate pursuant to Rule 27 of the Ohio Rules of Appellate Procedure.

Case No. 2024-G-0047