[Cite as *State v. Jewell*, 2025-Ohio-2715.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO, | : | JUDGES: |
| | : | Hon. Andrew J. King, P.J. |
| Plaintiff - Appellee | : | Hon. Robert G. Montgomery, J. |
| | : | Hon. David M. Gormley, J. |
| -vs- | : | |
| | : | |
| CHRISTOPHER JEWELL, | : | Case No. 2024CA00170 |
| | : | |
| Defendant - Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:                    Appeal from the Stark County Court
                                            of Common Pleas, Case No. 2024
                                            CR 0668


JUDGMENT:                                   Affirmed


DATE OF JUDGMENT:                           July 31, 2025


APPEARANCES:

For Plaintiff-Appellee                      For Defendant-Appellant

VICKI L. DESANTIS                           GEORGE URBAN
STARK COUNTY PROSECUTING                    116 Cleveland Avenue N.W.
  ATTORNEY'S OFFICE                         Suite 808
110 Central Plaza South, Suite 510          Canton, OH  44702
Canton, OH  44702

*Montgomery, J.*

## STATEMENT OF THE CASE

**{¶1}** Christopher Jewell ("Jewell") was indicted on April 10, 2024, in the Stark County Court of Common Pleas on charges of rape and gross sexual imposition.

**{¶2}** Jewell was arraigned on April 12, 2024, and entered pleas of "not guilty" to both counts. A jury trial was held on September 19, 2024, and Jewell was found guilty of rape and gross sexual imposition. A sentencing hearing was held on September 20, 2024, and Jewell was sentenced to an indefinite term of fifteen years to life on the rape charge and sixty months on the charge of gross sexual imposition. The sentences were ordered to be served consecutively for an aggregate sentence of an indefinite term of twenty years to life.

**{¶3}** Jewell filed a timely appeal and asserts the following assignments of error:

**{¶4}** "I. THE APPELLANT'S CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

**{¶5}** "II. THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT FAILED TO PROPERLY HANDLE THE WITNESS COACHING INCIDENT AT TRIAL AND DEPRIVED THE APPELLANT OF THE RIGHT TO A FAIR TRIAL."

**{¶6}** "III. THE APPELLANT WAS DENIED THE RIGHT TO A FAIR TRIAL WHEN THE PROSECUTION ENGAGED IN IMPROPER VOUCHING FOR THE COMPLAINING WITNESS'S CREDIBILITY AND DELIBERATELY MISREPRESENTED THE WITNESS'S TESTIMONY DURING CLOSING ARGUMENTS."

## FACTS OF THE CASE

**{¶7}** K.J. is the stepdaughter of Jewell, who is married to K.J.'s mother ("Mother"). Mother and K.J.'s father have been separated since K.J. was two years old and have shared custody. While residing at Jewell and Mother's home on August 15, 2023, K.J. became upset and called her grandmother ("Grandmother") and asked her to

pick her up. Grandmother drove to Jewell and Mother's home and picked up K.J. Grandmother was unable to calm K.J. and asked if she had gotten into a fight with the other children in the home. *Trial Transcript*, Vol. 2, p. 38. Grandmother asked K.J. if she had gotten into a fight with Jewell. *Id*. Grandmother asked K.J. if Jewell had hurt her or hit her. *Id*. K.J. answered in the negative to Grandmother's questions. *Id*. Grandmother then asked K.J. if Jewell had touched her and K.J. responded in the affirmative. *Id*. Grandmother asked some follow-up questions and then called the police. *Id.*

**{¶8}** Officer Taylor from the North Canton Police Department responded to the call and made a report. *Id.*, p. 93.

**{¶9}** Detective Marceric from the North Canton Police Department reviewed the report taken by Officer Taylor and launched an investigation. As part of his investigation, Detective Marceric spoke with K.J., Jewell, Mother, K.J.'s step siblings, K.J.'s half sibling, and Mother's sister. *Id.*, pp. 99-108. Detective Marceric also reviewed a forensic interview of K.J. and the allegations she made in that interview. *Id.*, p. 94.

**{¶10}** During the forensic interview, K.J. alleged that Jewell touched her vagina, licked her vagina, used a motorized device, like a massager, on her vagina and digitally penetrated her. *Id.*, p. 96. K.J. also disclosed during the interview that she told Mother a couple summers ago about the abuse, but Mother left it to K.J. as to what should happen. *Id.,* p. 113.

**{¶11}** K.J. also testified at trial that she disclosed the abuse to Mother while the abuse was happening by writing her a note that said, "Step-dad licked my pee-pee." *Id.*, p. 61. Mother responded to the note by giving K.J., "[t]he option to keep it a secret and

not tell anybody, divorce him or call the cops." K.J. stated, "Because I was so scared I decided to choose to just [to] keep it a secret." *Id*.

{¶12} K.J. described the first abuse by Jewell at trial. "I was in the shower and I -- my mom told him to help me wash my hair 'cause I was like not that well at it yet, and he started touching me inappropriately." *Id*., p. 52. When questioned further about where Jewell was touching her, K.J. responded, "On my vagina." *Id.*

{¶13} K.J. also testified that Jewell would take her to his bedroom and "[w]ould use some type of massaging object and would use his hands." *Id*., p. 54. She also testified that while this was happening, "The pants were off." *Id*. When asked how many times Jewell used the motorized thing on her vagina, K.J. responded, "Like multiple times. I, I don't have an exact answer." *Id.,* p. 56. K.J. also stated that, "He only licked my vagina like once." *Id*.

{¶14} Alissa Edgein, a medical expert specific to child abuse, observed the forensic interview and interviewed K.J.  Ms. Edgein stated that her evaluation of K.J. was consistent with a diagnosis of child sexual abuse. *Id*., p. 136.

{¶15} B.J., Mother's sister, stated that Mother contacted her prior to her interview with Detective Marceric and asked her to "Not tell what I knew." *Id.*, p. 152.

### ANALYSIS

{¶16} In his first assignment of error, Appellant asserts that his conviction was against the manifest weight of the evidence.

{¶17} Jewell asserts that, "A greater portion of credible evidence weighs in favor of acquitting Appellant, and by convicting Appellant, the jury delivered a manifest

miscarriage of justice that this Honorable Court should reverse." *Appellant Brief*, p. 6. However, Jewell cites no statutes or case law to support his argument.

{¶18} App.R. 16(A)(7) states that an appellant's brief shall contain, "An argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies. The argument may be preceded by a summary."

{¶19} "If an argument exists that can support [an] assignment of error, it is not this court's duty to root it out." *Thomas v. Harmon*, 2009-Ohio-3299, ¶ 14 (4th Dist.), quoting *State v. Carman*, 2008-Ohio-4368, ¶ 31 (8th Dist.). "It is not the function of this court to construct a foundation for [an appellant's] claims; failure to comply with the rules governing practice in the appellate courts is a tactic which is ordinarily fatal." *Catanzarite v. Boswell*, 2009-Ohio-1211, ¶ 16 (9th Dist.), quoting *Kremer v. Cox*, 114 Ohio App.3d 41, 60 (9th Dist. 1996).

{¶20} App.R. 12(A)(2) states, "The court may disregard an assignment of error presented for review if the party raising it fails to identify in the record the error on which the assignment of error is based or fails to argue the assignment separately in the brief, as required under App.R. 16(A)."

{¶21} This Court has held that, "An appellate court may rely upon App.R. 12(A) in overruling or disregarding an assignment of error because of "the lack of briefing" on the assignment of error. *State v. Miller*, 2004-Ohio-4636, ¶ 41, citing *Hawley v. Ritley*, 35 Ohio St.3d 157, 159 (1988).

**{¶22}** Even though Jewell's brief does not comply with the Appellate rules, this Court will consider his argument.

**{¶23}** In a challenge to this court concerning the manifest weight of evidence, the Ohio Supreme Court has stated, "Weight of the evidence concerns the inclination of the *greater amount of credible evidence,* offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the *greater amount of credible evidence* sustains the issue which is to be established before them. Weight is not a question of mathematics but depends on its effect in inducing belief." *State v. Thompkins*, 1997-Ohio-52, ¶¶ 9-10.

**{¶24}** When applying the manifest weight standard, "[o]nly in exceptional cases, where the evidence 'weighs heavily against the conviction,' should an appellate court overturn the trial court's judgment." *State v. Haller*, 2012-Ohio-5233, ¶ 9 (3d Dist.), quoting *State v. Hunter*, 2011-Ohio-6524, ¶ 119.

**{¶25}** Jewell's brief makes multiple statements that are not supported by the record. Jewell states, "It seems that because the Appellant disciplined his stepdaughter for not doing her chores as assigned, K.J. began hysterically crying and made up allegations." *Appellant Brief*, p. 6. Jewell also states that, "[t]hese allegations never once were told to anyone until K.J. was disciplined for failing to do her chores." *Id.*

**{¶26}** First, there is no evidence in the record that K.J. was disciplined for not doing chores. K.J. testified that Jewell called and yelled at all the children in the home. *Trial Transcript,* p. 74. However, there is no evidence that Jewell took any disciplinary action against K.J. Evidence was also presented that K.J. disclosed the abuse to Mother

years before she disclosed the abuse to Grandmother. K.J. told Detective Marceric that "a couple of summers ago" she told her mother about the abuse. *Trial Transcript*, p. 113. K.J. also testified at trial that she wrote Mother a note that said, "Step-dad licked my pee-pee." *Id.*, p. 61.

{¶27} Jewell also states in his brief, "Carrie Shirring argued in closing arguments …" *Id.*, p. 6. However, only the prosecutor and Jewell's attorney spoke during closing arguments. Ms. Shirring did not speak during closing arguments.

{¶28} K.J. testified to specific instances of abuse during the trial.

{¶29} A medical expert specific to child abuse, stated that her evaluation of K.J. was consistent with a diagnosis of child sexual abuse.

{¶30} After reviewing the entire record, this Court finds that the jury did not lose its way or create a manifest miscarriage of justice. Jewell's first assignment of error is overruled.

{¶31} Appellant asserts in his second assignment of error that the trial court mishandled the witness coaching incident. This Court disagrees.

{¶32} At the conclusion of K.J.'s trial testimony, Jewell's counsel informed the trial court, "My client has indicated to me that while we were doing a sidebar while K.J. [sic] was testifying she was looking at people in the gallery and they were communicating." *Trial Transcript*, p. 83. The court responded, "I can tell you that I have a clear view of the child and at the sidebar I kept looking at the child." *Id.* The court then stated, "I did not see any communication." *Id.* Jewell's counsel questioned Jewell and asked him who K.J. was communicating with. Jewell responded, "I don't know but they were back there. I know she, she was looking that way. And she made some gestures to her mouth, like she

covered her mouth." *Id.* The court called K.J. back to the stand and asked, "[d]id any of the people you were looking at communicate to you what to say or anything?" *Id.*, p. 89. K.J. responded, "No." *Id.*

**{¶33}** Jewell asserts in his brief that, "[t]he judge brushed off the incident because she did not see it happen and because the complaining witness denied the allegations." *Appellant Brief*, p. 7. In reviewing the trial transcript, this Court finds that the judge did not "brush off" Jewell's claims. The trial judge questioned Jewell, addressed the gallery and questioned the complaining witness. The judge then asked Jewell's trial counsel, "Is that sufficient, or is there anything in addition that you wish me to inquire of?" *Trial Transcript*, p. 90. Jewell's trial counsel stated, "Your honor, I believe you covered it." *Id.*

**{¶34}** Jewell also asserts that, "[t]hose persons that were coaching K.J.'s testimony-were no longer in the courtroom to be examined." *Id.*, p. 8. However, since Jewell did not know the identity of who was allegedly coaching K.J., he could not have known if "those persons who were coaching K.J." were available for questioning by the court.

**{¶35}** If the court is made aware of alleged coaching, it should caution the party doing the coaching or move the party out of the witness's line of sight. *State v. Moore*, 2002-Ohio-1831, ¶ 10.

**{¶36}** In this case, the trial court could not caution the party allegedly coaching K.J. or move the party out of K.J.'s sight. Jewell did not notify the trial court of the alleged coaching until after K.J. had testified and Jewell could not identify who was "coaching" her. Nevertheless, the trial court addressed the gallery stating, "[a] child is facing you and is looking out but obviously there can be no communication." *Trial Transcript,* p. 87.

**{¶37}** Appellant has cited, *Moore,* at ¶ 10, which states, "[t]he defendant must provide some evidence either that the misconduct was 'so egregious and inimical to the concept of a fair trial' that it could not be disregarded within the trial judge's discretion * * * or that the coaching was actually the primary source of testimony that had a reasonable probability of affecting the trial result."

**{¶38}** In the case at hand, Jewell has alleged, "The conduct of coaching in this scenario is beyond egregious – it downright compromised the integrity of the trial." *Appellant Brief*, p. 9. However, he has failed to show that any actions by a person in the gallery altered K.J.'s testimony or was the primary source of her testimony. Jewell has failed to demonstrate that the alleged coaching took place or that it affected the result of the trial.

**{¶39}** The trial court acted reasonably and fairly in addressing the alleged coaching claims of Jewell.

**{¶40}** Jewell's second assignment of error is overruled.

**{¶41}** In his third assignment of error, Jewell claims that he was denied the right to a fair trial when the prosecution engaged in improper vouching for the complaining witness during closing arguments. *Appellant Brief*, p. 10.

**{¶42}** The test for prosecutorial misconduct is whether remarks are improper and, if so, whether they prejudicially affected substantial rights of the accused. *State v. Lott*, 51 Ohio St.3d. 160, 165 (1990), citing *State v. Smith*, 14 Ohio St.3d 13, 14-15 (1984). "[An appellant] must show that there is a reasonable probability that but for the prosecutor's misconduct, the result of the proceeding would have been different." *State v. Overholt,* 2003-Ohio-3500, ¶ 47.

**{¶43}** A conviction will be reversed only where it is clear beyond a reasonable doubt that, absent the prosecutor's comments, the jury would not have found the defendant guilty. *State v. Benge*, 75 Ohio St.3d 136, 141 (1996).

**{¶44}** Jewell alleges in his brief that the prosecutor inserted his own opinion when he stated, "That makes her more credible." *Trial Transcript*, p. 241. Trial counsel for Jewell objected to this statement during the hearing by stating that the comment was "improper bolstering." *Id.* The trial court overruled the objection and instructed the jury, "Ladies and gentlemen, what the attorneys say is not evidence; you use your own collective memories as to what the evidence is." *Id.*

**{¶45}** In *State v. Lang*, 2011-Ohio-4215, ¶ 168, the trial court sustained an objection made by defense to the prosecutor's statement in closing arguments, "But I submit to you, and you judge his credibility and you look at what he knew, he is telling the truth." Defense counsel objected to the statement and the trial court sustained the objection. The court then gave a curative instruction to the jury. Upon an appeal to the Supreme Court of Ohio, the court found that, "[t]he trial court's instructions cured the effect of any improper vouching." *Id.*

**{¶46}** In the case at hand, the trial court overruled Jewell's objection but still gave a curative instruction to the jury that stated comments made by attorneys are not evidence. As stated in *Lang,* at ¶ 168, this curative instruction cured any effect of any possible improper witness vouching.

**{¶47}** Jewell also alleges in his brief that the prosecutor stated during closing arguments that, "Appellant and his wife tried to get B.J. [sic] to 'lie about who did it.'" *Appellant Brief*, p. 11. However, in reviewing the trial court transcript, Jewell misstates the

prosecutor's statement. The prosecutor was describing a hypothetical and said, "And then her own mom calls all the other witnesses that saw the accident and tells them to lie about who did it." *Trial Transcript,* p. 243. Contrary to Jewell's brief, the prosecutor does not mention Jewell in his statement. However, testimony was presented by B.J. that Mother contacted her prior to being interviewed by the investigating detective and asked her to not tell the detective what she knew. *Trial Transcript, p. 152.*

**{¶48}** Appellant's trial counsel objected to the prosecutor's aforementioned statement. The trial court overruled the objection and instructed the jury, "Ladies and Gentlemen, you recall what the testimony was and wasn't." *Id.*

**{¶49}** Once again, even though the trial court overruled the objection, it gave a curative instruction to the jury.

**{¶50}** Nevertheless, there is little chance that these isolated comments were prejudicial. Any alleged errors were corrected by the trial court's curative instructions that the arguments of counsel were not evidence and that the jury was to recall the evidence that was presented during the trial.

**{¶51}** This Court finds that the prosecutor did not make any statements that were improper or that his statements prejudicially affected Jewell's substantial rights. Jewell has failed to demonstrate that but for the prosecutor's alleged misconduct, the result of the proceeding would have been different.

**{¶52}** Jewell's third assignment of error is overruled.

## CONCLUSION

**{¶53}** Based on the foregoing, Jewell's first, second, and third assignments of error are overruled. The Judgment Entry filed in Stark County Court of Common Pleas on October 2, 2024, is affirmed in all respects.

By: Montgomery, J.

King, P.J. and

Gormley, J. concur.